Steven T. Graham (#105710)
sgraham@swlaw.com
William S. O'Hare (#082562)
wohare@swlaw.com
Elizabeth M. Weldon (#223452)
eweldon@swlaw.com
Jenny Hua (#294984)
jhua@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone:  714.427.7000
Facsimile:   714.427.7799

Attorneys for Defendants
LuLaRoe, LLC, LLR, Inc., Mark Stidham,
and DeAnne Brady

*[Counsel Continued On Page 2]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stella Lemberg, Jeni Laurence, Amandra Bluder, and Carissa Stuckart, Dana Apana, Karen Moss Brown, Shannon Carrillo, Samantha Hall, Natalie Lien, Melissa Atkinson, Aki Berry, Cheryl Hayton, Tiffany Scheffer, Lora Haskett, Ashley Healy, Jocelyn Burke-Craig, Brittany Bianchi, Kerry Tighe-Schwegler, Jini Patton, Laura Rocke, Stephenie McGurn, and Peggy Johnson, on Behalf of Themselves and All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>LuLaRoe, LLC d/b/a LuLaRoe, a California limited liability company, LLR, Inc., a Wyoming corporation, Mark Stidham; DeAnne Brady a/k/a DeAnne Stidham; and DOES 1-10, inclusive<br><br>              Defendants. | Case No. 5:17-cv-02102-AB-SHK<br>Hon. André Birotte Jr., Ctrm. 7B<br>Mag. Judge Shashi H. Kewalramani, Ctrm. 3/4<br><br>**Defendants' Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This Action; Memorandum of Points and Authorities**<br><br>**9 U.S.C. §§ 2-4; FRCP 12(b)(1)**<br><br>Date:     April 6, 2018<br>Time:    10:00 a.m.<br>Ctrm:    7B |

- 1 -

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1   Alejandro S. Angulo (State Bar No. 217823)
    aangulo@rutan.com
2   Bradley A. Chapin (State Bar No. 232885)
    bchapin@rutan.com
3   Kathryn D.Z. Domin (State Bar No. 274771)
    kdomin@rutan.com
4   Samantha L. Goates (State Bar No. 310610)
    sgoates@rutan.com
5   **RUTAN & TUCKER, LLP**
    611 Anton Boulevard, Suite 1400
6   Costa Mesa, California 92626-1931
    Telephone:   714-641-5100
7   Facsimile:   714-546-9035

8   Co-Counsel for Defendants
    LuLaRoe, LLC, LLR, Inc.,
9   Mark Stidham, and DeAnne Brady

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

4824-4927-6254.1

- 2 -

MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-CV-02102-AB-SHK

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 6, 2018, at 10:00 a.m., or as soon thereafter as counsel may be heard in Department 7B of the above-entitled court, located at 350 West First Street, Los Angeles, California 90012, Defendants LuLaRoe, LLC, LLR, Inc., Mark Stidham, and DeAnne Brady (collectively referred to as "Defendants"; and LuLaRoe, LLC and LLR, Inc. collectively referred to as "LLR"), will, and hereby do, move the court for an order: (1) compelling Plaintiffs Stella Lemberg, Jeni Laurence, Amandra Bluder, Carissa Stuckart, Dana Apana, Karen Moss Brown, Shannon Carrillo, Samantha Hall, Natalie Lien, Melissa Atkinson, Aki Berry, Cheryl Hayton, Tiffany Scheffer, Lora Haskett, Ashley Healy, Jocelyn Burke-Craig, Brittany Bianchi, Kerry Tighe-Schwegler, Jini Patton, Laura Rocke, Stephenie McGurn, and Peggy Johnson (together, "Plaintiffs") to arbitrate on an individual basis their claims against Defendants in accordance with each Plaintiff's agreement with LuLaRoe, LLC or LLR, Inc. and related dispute resolution procedures, and (2) dismissing Plaintiffs' First Amended Class Action Complaint (the "Complaint") for: (a) failure to arbitrate the dispute, and (b) failure to mediate, which is a condition precedent to arbitrate. In the alternative, Defendants move the court for an order staying this action pending arbitration and ordering the Plaintiffs to arbitrate on an individual basis in accordance with the parties' arbitration agreements and related dispute resolution procedures.

Defendants make this motion under 9 U.S.C. §§ 2-4 and Federal Rule of Civil Procedure 12(b)(1) on the ground that the parties have agreed that all such matters must proceed first by mediation, and then by arbitration.

This motion is made following multiple conferences of counsel pursuant to Local Rule 7-3, which most recently took place on March 2, 2018.

Defendants' motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed

Declarations of Justin Lyon, Megan Alvarez, Grace Nicole Santillana, Austin Stidham, Mark Stidham, Summer Johnson, Elizabeth M. Weldon, Alejandro Angulo, and William Floratos, the pleadings and papers on file in this action, and on such other and further argument and evidence as the Court may properly receive.

Dated: March 9, 2018                    SNELL & WILMER L.L.P.


By: */s/Elizabeth M. Weldon*
William S. O'Hare
Steven T. Graham
Elizabeth M. Weldon
Jenny Hua
Attorneys for Defendants
LuLaRoe, LLC, LLR, Inc., Mark
Stidham, and DeAnne Brady

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................. 1

      A.   LLR and LuLaRoe ................................................................. 1

      B.   The Arbitration Provisions .................................................... 2

      C.   Plaintiffs' Relationships and Agreements with LLR ............ 5

           1.   Each Plaintiff's Agreement and Onboarding Process ............... 5

                a.   Contracting Before September 2016 ..................... 5

                b.   Contracting After September 2016 – DocuSign ............. 6

                c.   Onboarding ............................................................ 6

           2.   Policies and Procedures ........................................... 7

      D.   Plaintiffs' Complaint ............................................................. 9

III.  LEGAL ARGUMENT ........................................................................ 10

      A.   The FAA governs the arbitration provision ......................... 10

      B.   Plaintiffs are bound by an enforceable arbitration provision ............. 11

           1.   Plaintiffs have accepted the arbitration provision .................. 11

           2.   The arbitration provision encompasses this dispute ................. 15

           3.   No generally applicable contract defense invalidates the arbitration provision ................................................. 16

                a.   The agreement is not procedurally unconscionable ....... 18

                b.   The agreement is not substantively unconscionable ...... 20

      C.   Each Defendant may enforce the arbitration provision ...................... 21

      D.   This Court may compel individual arbitration .................................. 22

      E.   The Action Should be Dismissed or Stayed ...................................... 25

IV.   CONCLUSION ..................................................................................... 25

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
  513 U.S. 265 (1995)..................................................................................10

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 S.Ct. 2304 (2013) ...........................................................22

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
  No. 14-CV-02123-VC, 2014 WL 12610227 (N.D. Cal. Oct. 31,
  2014) ..............................................................................................13, 14

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
  622 F. Supp. 2d 825 (N.D. Cal. 2007).....................................................22

*Armendariz v. Foundation Health Psychcare Servs.*,
  24 Cal. 4th 83 (2000) ..............................................................17, 18, 20

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..........................................................12, 16, 23

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
  647 F.3d 914 (9th Cir. 2011) ..................................................................15

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013) ...........................................15, 16

*Centaur Corp. v. ON Semiconductor Components Indus., LLC*,
  No. 09 CV 2041 JM (BLM), 2010 WL 444715
  (S.D. Cal. Feb. 2, 2010) ..........................................................................25

*Chico v. Hilton Worldwide, Inc.*,
  No. CV 14–5750–JFW (SSx), 2014 WL 5088240
  (C.D. Cal. Oct. 7, 2014) ..........................................................................23

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ..........................................................10, 15

*Flores v. Swift Transportation Co.*,
  No. CV 14–02900 AB (Ex), 2014 WL 12639088
  (C.D. Cal. Oct. 3, 2014) ..........................................................................23

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014) .................................................................25

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

*Laughlin v. VMware, Inc.*,
  No. 5:11-CV-00530 EJD, 2012 WL 298230
  (N.D. Cal. Feb. 1, 2012) ...................................................................................20, 21

*Miguel v. JPMorgan Chase Bank, N.A.*,
  No. CV 12-3308 PSG PLAX, 2013 WL 452418
  (C.D. Cal. Feb. 5, 2013)...........................................................................................12

*Momot v. Mastro*,
  652 F.3d 982 (9th Cir. 2011) ...................................................................................10

*Monex Deposit Co. v. Gilliam*,
  671 F. Supp. 2d 1137 (C.D. Cal. 2009) ...................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)......................................................................................................10

*Nghiem v. NEC Elec., Inc.*,
  25 F.3d 1437 (9th Cir. 1994) ...................................................................................14

*Quiroz v. Cavalry SPV I, LLC*,
  217 F. Supp. 3d 1130 (C.D. Cal. 2016) ...................................................................14

*Reed Elsevier, Inc. v. Crockett*,
  734 F.3d 594 (6th Cir. 2013) ...................................................................................23

*Robinson v. Isaacs*,
  No. 11CV1021 JLS RBB, 2011 WL 4862420
  (S.D. Cal. Oct. 12, 2011) .........................................................................................21

*Smith v. Vmware, Inc.*,
  No. 15-CV-03750-TEH, 2016 WL 54120
  (N.D. Cal. Jan. 5, 2016) ...........................................................................................21

*Sovak v. Chugai Pharm. Co.*,
  280 F.3d 1266 (9th Cir. 2002) .................................................................................11

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2011)............................................................................................22, 23

*Syscom (USA), Inc. v. Nakajima USA, Inc.*,
  No. CV 14-07137-AB (JPRx), 2014 WL 12695688
  (C.D. Cal. Dec. 3, 2014) ..........................................................................................21

*Target Corporation v. Wolters Kluwer Health, Inc.*,
  No. CV 15-6350-AB (FFMx) 2015 WL 12646483
  (C.D.Cal. Dec. 16, 2015) .........................................................................................25

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (2016) ...............................................................................................20

*Uptown Drug Co. v. CVS Caremark Corp.*,
  962 F. Supp. 2d 1172 (N.D. Cal. 2013) ......................................................... 17, 21

*Villarreal v. Perfection Pet Foods, LLC*,
  No. 116CV01661LJOEPG, 2017 WL 1353802
  (E.D. Cal. Apr. 10, 2017) ................................................................................ 11

*Wolsey, Ltd. v. Foodmaker, Inc.*,
  144 F.3d 1205 (9th Cir. 1998) ........................................................................ 11

*Ziober v. BLB Res., Inc.*,
  839 F.3d 814 (9th Cir. 2016) ........................................................................... 10

**State Cases**

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) ................................................................... 17, 18, 19, 20

*Dean Witter Reynolds, Inc. v. Superior Court*,
  211 Cal. App. 3d 758 (1989) ........................................................................... 18

*Gutierrez v. Autowest, Inc.*,
  114 Cal. App. 4th 77 (2003) ............................................................................ 17

*Loral Corp. v. Moyes*,
  174 Cal. App. 3d 268 (1985) ........................................................................... 21

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305 (2005) ........................................................................ 17

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) ...................................................... 12, 14, 17, 18, 20

*Roman v. Superior Court*,
  172 Cal. App. 4th 1462 (2009) ........................................................................ 18

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) .................................................................................... 17

*Wolschlager v. Fidelity Nat. Title Ins. Co.*,
  111 Cal. App. 4th 784 (2003) ........................................................... 12, 19, 20

**Federal Statutes**

9 U.S.C. § 1 ....................................................................................................... 10

9 U.S.C. § 2 ................................................................................................... 10, 12

9 U.S.C. § 3 ................................................................................................... 10, 25

9 U.S.C. § 4 ................................................................................................... 10, 25

Bus. & Prof. Code § 17200 ............................................................................... 9, 16

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Bus. & Prof. Code § 17500 ..................................................................... 9, 16

**Rules**

Fed. R. Civ. P. 12 ...................................................................................... 4

Fed. R. Civ. P. 12(b)(1) .......................................................................... 10

Fed. R. Civ. P. 56 ...................................................................................... 4

**Other Authorities**

AAA Commercial Arbitration Rules and Mediation Procedures ............ 3, 4

AAA Supplementary Rules for Class Arbitrations, Rule 9(a) ................. 24

AAA Supplementary Rules for Class Arbitrations, Rule 9(b) ................. 25

JAMS Class Action Procedures, Rule 4 .................................................. 24

JAMS Class Action Procedures, Rule 6 .................................................. 24

JAMS Streamlined Arbitration Rules & Procedures of JAMS ............... 3, 4

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  **Memorandum of Points and Authorities**

2  **I.    INTRODUCTION**

3      This is a putative class action now brought by twenty-two individual retailers

4  against LLR, Inc., a rapidly growing seller of the LuLaRoe brand of clothing and

5  fashion apparel, related company LuLaRoe, LLC, and founders Mark Stidham and

6  DeAnne Brady. The essence of Plaintiffs' claims is that Defendants: breached their

7  contracts with Plaintiffs, changed or failed to abide by their policies governing the

8  return and repurchase of inventory, operate an unlawful pyramid scheme, and

9  violated California state law, including the Seller Assisted Marketing Plan Act, the

10  Unfair Competition Law, and the Unfair Advertising Law.

11      Defendants deny the merits of these claims and will demonstrate on another

12  day (before one or more arbitrators) that LLR's success is built on tremendous

13  demand by the consumers who buy its products, and not on Plaintiffs' made up

14  pyramid scheme. By this motion, Defendants seek to enforce the parties' mutual

15  agreement to individually mediate, then arbitrate, their disputes.

16  **II.    FACTUAL BACKGROUND**

17      **A.    LLR and LuLaRoe**

18      LLR, Inc. is an apparel company that sells clothing and fashion apparel at

19  wholesale prices to independent consultants or retailers ("Retailers") who, in turn,

20  resell these items to third-party customers. [Declaration of Mark Stidham ("M.

21  Stidham Decl.") ¶ 4.] The Retailers sell these items through in-home parties,

22  pop-up stores, and social media solely controlled by them at prices set by them.

23  [*Id*.] Each Retailer is an independent contractor. [*Id*.; Declaration of Justin Lyon

24  ("Lyon Decl.") ¶ 3, Ex. 27 at § 2 (Ret. Agmt. version 3.0), ¶ 4, Ex. 28 at § 2 (Ret.

25  Agmt. version 4.0) and ¶ 5, Ex. 29 at § 4 (Ret. Agmt. version 6.5.1).]

26      The LuLaRoe-branded business started in 2013 (under LuLaRoe, LLC

27  originally) as a small scale operation and has experienced tremendous growth,

28  expanding the Retailer network to all 50 states and abroad, and it now has

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-CV-02102-AB-SHK

approximately 63,000 Retailers. [M. Stidham Decl. ¶ 5.] After LLR, Inc. was formed in 2015, the LuLaRoe-branded business continued via LLR, Inc., and LuLaRoe, LLC became a provider of management services to LLR, Inc. [*Id.* ¶¶ 6, 7.] Today, LLR, Inc. contracts with the Retailers, and it also contracts with its related company, LuLaRoe, LLC, which provides certain management services to LLR, Inc., including consulting, employment, and staffing services, as well as maintenance of business records and reports. [1] [*Id.* ¶¶ 4, 6.]

### B.   The Arbitration Provisions

Each Retailer enters into a LuLaRoe Independent Consultant Program Application and Agreement ("Retailer Agreement").[2] [Declaration of Megan Alvarez ("Alvarez Decl.") ¶ 3.] In the body of Retailer Agreement versions 4.0 and 6.5.1 (signed by all Plaintiffs except for McGurn and Patton), the parties agreed to arbitration:

> In the event of a dispute between Consultant and LLR arising from or relating to the Agreement, or the rights and obligations of either party, the parties shall attempt in good faith to resolve the dispute through nonbinding mediation as more fully described in the Policies and Procedures. LLR shall not be obligated to engage in mediation as a prerequisite to disciplinary action against Consultant. If the parties are unsuccessful in resolving their dispute through mediation, the dispute shall be settled totally and finally by arbitration as more fully described in the Policies and Procedures.

[Lyon Decl. ¶ 5, Ex. 29 (Ret. Agmt. version 6.5.1) § 25; ¶ 4, Ex. 28 (Ret. Agmt. version 4.0) § 21 (minor variations in wording).]

In addition, all versions of the Retailer Agreement (including those of

---

[1] Before LLR, Inc. was created, LuLaRoe, LLC contracted with Retailers. [Lyon Decl., ¶ 3, Ex. 27.]

[2] The Retailer Agreements refer to "Consultants", but LLR now commonly refers to these parties as Retailers and uses this term in this motion. [Alvarez Decl. ¶ 3.]

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Plaintiffs McGurn and Patton) explicitly incorporate LLR, Inc.'s Policies and Procedures and related amendments, which contain an agreement to arbitrate. [Lyon Decl. ¶ 3, Ex. 27 (Ret. Agmt. version 3.0 at § 13 (". . . this Agreement shall include: (i) The LuLaRoe Policies and Procedures; (ii) The LuLaRoe Compensation Plan . . . all of which are hereby incorporated herein by reference.")); ¶ 4, Ex. 28 (Ret. Agmt. version 4.0 at § 15 (minor variations in wording)); and ¶ 5, Ex. 29 (Ret. Agmt. version 6.5.1 at § 11 (same)).] The Policies and Procedures were amended by a First Amendment to Policies and Procedures of LLR, Inc. ("First Amendment"), dated October 12, 2016, which changed the venue and choice of law for arbitration from Wyoming to California. [Lyon Decl. ¶ 7, Ex. 31.]

The Policies and Procedures contain detailed arbitration and mediation provisions. As a first step, the parties agreed to attempt to resolve their disputes through mediation. [Lyon Decl. ¶ 6, Ex. 30 (Policies and Procedures) § 6.3.] Plaintiffs ignored their agreement to individually mediate, and thus far have ignored or refused Defendants' demand they do so. [Declaration of Elizabeth M. Weldon ("Weldon Decl.") ¶¶ 2-11, Exs. 11-24; Declaration of Alejandro Angulo ¶¶ 3-8, Exs. 3-10; Declaration of William Floratos ¶ 2, Ex. 2.]

The arbitration provision, at section 6.4, is more than one full page, is clearly labeled "Arbitration," and reads (emphasis in the original):

> **If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. The Parties waive all rights to trial by jury or to any court.** The arbitration shall be filed with, and administered by, the American Arbitration Association ("AAA") or JAMS under their respective rules and procedures. The *Commercial Arbitration Rules and Mediation Procedures* of the AAA are available at the AAA's website at www.adr.org. The *Streamlined Arbitration Rules & Procedures* of JAMS are available at the JAMS website at

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

www.jamsadr.com. Copies of the AAA's *Commercial Arbitration Rules and Mediation Procedures* or JAM's *Streamlined Arbitration Rules & Procedures* will be emailed to Independent Fashion Consultants upon request to LLR's Legal & Compliance Department. Notwithstanding the rules of the AAA or JAMS, the following shall apply to all arbitration actions:

- The Federal Rules of Evidence shall apply in all cases;
- The parties shall be entitled to all discovery rights permitted by the Federal Rules of Civil Procedure;
- The parties shall be entitled to bring motions under Rules 12 and/or 56 of the Federal Rules of Civil Procedure;
- The arbitration shall occur within 180 days from the date on which the arbitrator is appointed, and shall last no more than five business days; and
- The parties shall be allotted equal time to present their respective cases, including cross-examinations.

Except as provided below for Louisiana residents, all arbitration proceedings shall be held in Cheyenne, Wyoming. There shall be one arbitrator . . . . Each party to the arbitration shall be responsible for its own costs and expenses of arbitration, including legal and filing fees. The decision of the arbitrator shall be final and binding . . . .

The parties and the arbitrator shall maintain the confidentiality of the entire arbitration process and shall not disclose to any person not directly involved in the arbitration process: [the dispute and claim, testimony and evidence, award, or rulings] . . . .

Notwithstanding the foregoing, nothing in these Policies and Procedures shall prevent either party from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary

1    injunction, preliminary injunction, permanent injunction, or other

2    relief available to safeguard and protect its intellectual property rights

3    and/or to enforce its rights under the non-solicitation provision of the

4    Agreement. [Lyon Decl. ¶ 6, Ex. 30 (Policies and Procedures).]

5    The First Amendment contains the same detailed arbitration provision as the

6    Policies and Procedures, but the venue and choice of law was changed to

7    California. [Lyon Decl. ¶ 7, Ex. 31 (First Amendment).]

8        **C.**    <u>**Plaintiffs' Relationships and Agreements with LLR**</u>

9        **1.**    **Each Plaintiff's Agreement and Onboarding Process**

10   LLR's contractual relationship with a Retailer begins when the parties enter

11   into a Retailer Agreement. [Alvarez Decl. ¶ 4.] Of the twenty-two plaintiffs in this

12   action, each is or was an LLR Retailer and signed her own Retailer Agreement.

13   Two of the twenty-two Plaintiffs signed version 3.0 of the Retailer Agreement,

14   fifteen signed version 4.0 of the Retailer Agreement, and five signed version 6.5.1

15   of the Retailer Agreement. [Alvarez Decl. ¶¶ 16-17, 21, 24, 26, 28, 31, 33, 36, 38,

16   40, 43, 46, 48, 51, 54, 57, 60, 63, 66, 69, 72, 75, Exs. 33, 33A, 35-52, 54-56; Lyon

17   Decl. ¶ 3-5, Exs. 27-29.] The exact process of contract submission depends on the

18   timeframe of the Retailer Agreement, as the process was somewhat less automated

19   until September 2016. [Alvarez Decl. ¶¶ 4-13.]

20       **a.**    **Contracting Before September 2016**

21   Before September 2016, potential Retailers often received a copy of the

22   Retailer Agreement from an existing Retailer and then electronically submitted at

23   least the first page (with the potential new Retailer's information) and the last page

24   (with the potential new Retailer's signature) of the Retailer Agreement to

25   onboarding@lularoe.com. [*Id*. ¶ 7.] The existing Retailer also was tasked with

26   training the new Retailer and providing access to documents and information, such

27   as the Policies and Procedures. [*Id*. ¶ 4, 7.] Individuals could also inquire directly

28   with LLR, Inc. about becoming a Retailer, in which case a member of the

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD. SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    Enrollment/Retail Support Department would send those individuals the Retailer

2    Agreement and/or other information upon request, such as LLR Inc.'s Policies and

3    Procedures. [*Id*. ¶ 9.] This process was in place for the seventeen Plaintiffs who

4    signed Retailer Agreement versions 3.0 and 4.0.

5                   **b.      Contracting After September 2016 – DocuSign**

6          In September 2016, the onboarding process became more automated when

7    LLR, Inc. began utilizing the electronic document system, DocuSign, to manage the

8    enrollment process. [*Id*. ¶ 10.] With the DocuSign system, upon expressing interest

9    in becoming a Retailer, an existing Retailer sends the potential new Retailer an

10   email with a hyperlink to an application page ("Application Page"), which includes

11   links to the Retailer Agreement, the Policies and Procedures, the First Amendment

12   (after it was issued), and other documents. [*Id*., Ex. 32] Applicants are then asked to

13   agree to the terms of these documents, by clicking the "I agree" button located on

14   the Application Page. [*Id*.] Applicants are asked for identifying information, which

15   is submitted to DocuSign and auto-filled in the Retailer Agreement. [*Id*.] The

16   Retailer Agreement is then sent to the applicant by email for review, and the

17   applicant is asked to electronically sign the Retailer Agreement by clicking a box.

18   [*Id*. ¶ 11.]

19         Once the applicant has electronically signed the Retailer Agreement and

20   placed his or her first order, LLR, Inc. countersigns the agreement (through

21   checking a box) and a Certificate of Completion is generated by the DocuSign

22   program, showing the date and time that both parties electronically executed the

23   agreement. [*Id*. ¶ 12.] Then a copy of the fully executed Retailer Agreement, the

24   Policies and Procedures, and the First Amendment are forwarded to the new

25   Retailer from the DocuSign program. [*Id*.] This process was in place for the five

26   Plaintiffs who signed Retailer Agreement version 6.5.1.

27                   **c.      Onboarding**

28         Under both the DocuSign system and the system prior to September 2016,

after the Retailer Agreement is received from the potential new Retailer, the

Retailer is contacted by a member of the Enrollment/Retail Support Department to

assist him or her in beginning business with LLR, Inc., including providing access

to the "Back Office"—a portal on LLR Inc.'s website accessible by individual login

information—and making an initial order of products. [*Id*. ¶ 14.]

### 2.    Policies and Procedures

While there are terms that vary between the three versions of the Retailer

Agreement, all versions explicitly incorporate by reference several documents,

including the "LuLaRoe Policies and Procedures." [Lyon Decl. ¶ 3, Ex. 27 (Ret.

Agmt. version 3.0 at § 13); ¶ 4, Ex. 28 (Ret. Agmt. version 4.0 at § 15); ¶ 5, Ex. 29

(Ret. Agmt. version 6.5.1 at § 11).] All of the plaintiffs (except Patton and McGurn,

who signed Retailer Agreement version 3.0) agreed in the Retailer Agreement that

they have "read and agree[] to comply with the LLR Inc. Policies and Procedures . .

. which are incorporated into and made a part of this Agreement."[3] [Lyon Decl.

¶¶ 3-4, Exs. 28-29 (Ret. Agmt. version 4.0 at § 5 and Ret. Agmt. version 6.5.1 at §

11).] The Policies and Procedures state they are in place to "Establish Company

policy and define the contractual relationship between the Company and its

Independent Fashion Consultants. . . ." [Lyon Decl. ¶ 6, Ex. 30.]

The Policies and Procedures, which contain an arbitration agreement, are

available to the Retailer in a variety of ways: from LLR on request; on the Back

Office at www.backoffice.mylularoe.com/login; from the referring Retailer; as part

of the DocuSign process; and via group emails. [Declaration of Summer Johnson

("Johnson Decl.") ¶¶ 3-4, Ex. 1; Alvarez Decl. ¶ 7; Lyon Decl. ¶ 6; Santillana Decl.

¶ 4.] Through the Back Office, Retailers can input and update their personal

information, place orders for LuLaRoe-branded products, and access historical

---

[3] Retailer Agreement versions 4.0 and 6.5.1 also provided the Retailer with additional time after execution to cancel the agreement. [Lyon Decl. ¶¶ 4-5, Exs. 29, 28 (Ret. Agmt. version 6.5.1 at § 11; Ret. Agmt. version 4.0 at § 5 (minor variations in language)).] Retailers could also terminate their Retailer Agreement thereafter. [Lyon Decl. ¶¶ 4-5, Exs. 28 (§ 24), 29 (§ 32).]

Snell & Wilmer
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

order information and LLR documents, including training and marketing materials. [Declaration of Austin Stidham ("A. Stidham Decl.") ¶ 2.] The current Retailer Agreement, the Policies and Procedures, and the First Amendment (after it was adopted) were and are all available to Retailers in the Back Office. [Lyon Decl. ¶¶ 5-7, Exs. 29-31; A. Stidham Decl. ¶ 3.] After placing their initial product order, Retailers generally place orders for LuLaRoe-branded products on the Back Office, and each of the Plaintiffs had access to the Back Office. [A. Stidham Decl. ¶ 2.]

The Policies and Procedures cannot be missed as they are also mentioned by name throughout the Retailer Agreement, specifically in Retailer Agreement version 3.0 at sections 6, 11, and 13, in version 4.0 at sections 5, 8, 15, 19, 21 and in version 6.5.1 at sections 8, 11, 13, 15, 25. The Retailer Agreements make clear that the governing documents, including the Policies and Procedures "may . . . be amended at the sole discretion of LuLaRoe and any changes or amendments will become effective upon written notice . . . ." [Lyon Decl. at ¶ 3, Ex. 27 (Ret. Agmt. version 3.0 § 6); ¶ 4, Ex. 28 (Ret. Agmt. version 4.0 § 8)(similar); ¶ 5, Ex. 29 (Ret. Agmt. version 6.5.1 § 13)(similar).] Section 1.3 of the Policies and Procedures provides that amendments "shall be effective thirty (30) days after publication of notice that the Agreement has been modified" and that notice includes, among other things, "[p]osting on the official Company website", which occurred when the First Amendment was posted on or about October 14, 2016. [*Id*. ¶¶ 6-7, Ex. 30, § 1.3, Ex. 31.] The First Amendment was available to all Retailers as it was posted on the Back Office, plus, as to at least 18 of the plaintiffs, LLR can demonstrate receipt of the First Amendment they were sent emails that attached it or DocuSign contracts and documents after the First Amendment.[4] [Alvarez Decl. ¶¶ 26, 36, 38, 40, 75, Exs. 37, 41-43, 56; Santillana Decl. ¶¶ 5-7.]

---

[4] The other four Plaintiffs (Brown, Bluder, Lien, and Patton) had provable access to the First Amendment, because they made purchases in the Back Office after the First Amendment was posted on or about October 14, 2016.  [A. Stidham Decl. ¶¶ 10, 13, 16, 25, Exs. 64, 67, 70, 79.]

- 8 -

MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-CV-02102-AB-SHK

### D.   **Plaintiffs' Complaint**

This action was commenced on October 13, 2017, when four of the Plaintiffs filed a complaint alleging that LuLaRoe, LLC and LLR, Inc. did not comply with their refund policies arising out of their Retailer Agreements. [Dkt. 1.] The Defendants named in that complaint responded on December 27, 2017 with a motion to dismiss and compel individual arbitration. [Dkt. 36.]

On January 12, 2018, Plaintiffs filed a first amended putative class action complaint that added new claims, 18 additional named Plaintiffs, and two individual Defendants (LuLaRoe founders and officers, Mark Stidham and DeAnne Brady (Stidham)). [Dkt. 45.] Plaintiffs allege "Plaintiffs and the Class entered into contractual agreements with Defendants to become Consultants . . ." [*Id*. at ¶ 181.] They assert claims against all Defendants, including Violation of Business & Professions Code section 17200, et seq., Violation of Business & Professions Code section 17500, et seq., Quasi-contract, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Conversion, Endless Chain Scheme violations, and violation of the Seller Assisted Marketing Plan Act, alleging that Defendants violated promises to buy back Plaintiffs' inventory for 100% of costs, along with shipping expenses, are operating a pyramid scheme, and are violating a California act about the sale of business opportunities.

Both complaints were filed in disregard of Plaintiffs' agreements to first mediate, then arbitrate their disputes. Following several procedural skirmishes over whether the amended complaint was properly filed, on March 1, 2018, the Court allowed the amended complaint to serve as the operative pleading.  The court denied Defendants' initial arbitration motion as moot due to Plaintiffs' filing of the first amended complaint, thus allowing Defendants to file another arbitration motion directed to the amended complaint. [Dkt. 74.]

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-CV-02102-AB-SHK

## III.   **LEGAL ARGUMENT**

More than three decades of Supreme Court precedent supports a "'liberal federal policy favoring arbitration agreements'" under the Federal Arbitration Act. *Zieber v. BLB Res., Inc.*, 839 F.3d 814, 816 (9th Cir. 2016), cert. denied, 137 S. Ct. 2274 (2017) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Because arbitration is fundamentally a matter of contract, 'the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (citations omitted); 9 U.S.C. §§ 2-4.

The Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted); 9 U.S.C. § 4.

The broad arbitration provision agreed to by each of the Plaintiffs governs all of their claims and thus requires that these claims, which "aris[e] out of or relat[e] to the Agreement," must be resolved in arbitration. Fed. R. Civ. Proc. 12(b)(1). [Lyon Decl. ¶¶ 4-7, Exs. 28-31 (Ret. Agmt. version 4.0, § 21; Ret. Agmt. version 6.5.1, § 25; Policies and Procedures § 6.4, and First Amendment, p. 1).]

### A.   **The FAA governs the arbitration provision**

The FAA applies to any "written arbitration provision in 'a contract *evidencing* a transaction *involving* commerce.'"[5] *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 268 (1995) (italics added in original) (citing 9 U.S.C. § 2). This phrase is to be read 'broadly,' extending the FAA's reach "to the limits of Congress' Commerce Clause power." *Id.* Here, LLR's Retailer network extends to all 50 states and abroad. [M. Stidham Decl. ¶ 5.] Indeed, Plaintiffs reside in and conducted business from various states including California, New Jersey, Oregon,

---

[5] "Commerce" is defined in 9 U.S.C. § 1 as, among other things, "commerce among the several States" or interstate commerce.

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-CV-02102-AB-SHK

Hawaii, Arizona, Oklahoma, Florida, Wyoming, New York, Pennsylvania, Nevada. [Dkt. 45 ¶¶ 9-30.] There is no doubt that the agreement with each of the Plaintiffs evidences "a transaction involving commerce."

Even with the inclusion of a general California choice-of-law provision, the FAA still governs where there is not a "clear and unmistakable" intent that the FAA should not be applied. *Villarreal v. Perfection Pet Foods, LLC*, No. 116CV01661LJOEPG, 2017 WL 1353802, at *2 (E.D. Cal. Apr. 10, 2017); *see Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210, 1213 (9th Cir. 1998) (FAA rather than CAA applied even where parties' agreement provided that California law would apply); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002). The Retailer Agreements here have no such "clear and unmistakable" statement. [Lyon Decl. ¶¶ 3-7, Exs. 27-31 (Ret. Agmt. version 3.0 at § 16; Ret. Agmt. version 4.0 at § 21; Ret. Agmt. version 6.5.1 at § 25; Policies and Procedures § 6.5; First Amendment, p. 2).]

## B. Plaintiffs are bound by an enforceable arbitration provision

### 1. Plaintiffs have accepted the arbitration provision

As set forth above, each Plaintiff signed a Retailer Agreement, which contains—on its face or in the Policies and Procedures—an unambiguous agreement to arbitrate any dispute "arising from or relating to" the Retailer Agreement. [Lyon Decl. ¶¶ 4-7, Exs. 28-31 (Ret. Agmt. version 4.0 at § 21; Ret. Agmt. version 6.5.1 at § 25; Policies and Procedures § 6.4, and First Amendment, p. 1).] Plaintiffs with versions 4.0 and 6.5.1 of the Retailer Agreement are required by the body of the Retailer Agreement itself to arbitrate their claims. As explained below, the remaining two Plaintiffs (McGurn and Patton) are also obligated to arbitrate their claims based on the Policies and Procedures that are incorporated into their contracts.

California general contract law governs whether the parties' agreement is valid, providing that law does not purport to create defenses that are specific to

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

arbitration agreements. *Monex Deposit Co. v. Gilliam*, 671 F. Supp. 2d 1137, 1142 (C.D. Cal. 2009); 9 U.S.C. § 2 (agreement to arbitrate shall be enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract."); *AT&T Mobility LLC v. Concepcion* ("*Concepcion*"), 563 U.S. 333, 339 (2011) (defenses that apply only to arbitration are preempted by the FAA). Where a party signs the agreement, its acceptance of the agreement is express. *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). Plaintiffs' acceptances of the Retailer Agreement were express as they signed (in writing or electronically) and submitted the agreement to onboarding@lularoe.com or via DocuSign, and, moreover, alleged that they each "entered into contractual agreements with Defendants to become Consultants . . ." [Alvarez Decl. ¶¶ 7, 9; Dkt. 45 ¶ 181.]

By agreeing to the Retailer Agreement, Plaintiffs also agreed to be bound by the Policies and Procedures. Under California law, parties may incorporate by reference the terms of another document as long as: (1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties. *Wolschlager v. Fidelity Nat. Title Ins. Co.*, 111 Cal. App. 4th 784, 787, 790 (2003). Where an incorporated document contains an arbitration provision, the document and provision are binding on a party even if that party did not have or see them at the time of an agreement. *Id.* at 791(consumer of title policy bound by its arbitration agreement even though he did not have the title policy—the preliminary title report generically referenced the policy and that it was available at the insurer's office); *see also Miguel v. JPMorgan Chase Bank, N.A.*, No. CV 12-3308 PSG PLAX, 2013 WL 452418, at *4 (C.D. Cal. Feb. 5, 2013) (bank's incorporation by reference of arbitration agreement valid and plaintiff "cannot claim that he failed to review the provisions of the Arbitration Agreement where he signed a document to indicate that he read

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  it."); *Amirhamzeh v. Wells Fargo Bank, N.A.*, No. 14-CV-02123-VC, 2014 WL

2  12610227, at *2 (N.D. Cal. Oct. 31, 2014) (consumer received arbitration provision

3  after joining and did not cancel after receipt, showing acceptance).

4        Here, each Plaintiff signed the Retailer Agreement that clearly and

5  unequivocally states that it includes and incorporates by reference, among other

6  things, the "LuLaRoe Policies and Procedures" and repeatedly refers to those

7  Policies and Procedures. [Lyon Decl. ¶ 3, Ex. 27 (Ret. Agmt. version 3.0 at § 13);

8  ¶ 4, Ex. 28 (Ret. Agmt. version 4.0 at § 15); ¶ 5, Ex. 29 (Ret. Agmt. version 6.5.1 at

9  § 11).] And all Plaintiffs, except McGurn and Patton, affirmatively represented that

10 they "read and agree[d] to comply with the LLR Inc. Policies and Procedures . . .

11 which are incorporated into and made a part of this Agreement." [Lyon Decl. ¶¶ 4-

12 5, Exs. 28, 29 (Ret. Agmt. version 4.0 at § 5 and Ret. Agmt. version 6.5.1 at §11).]

13 The Policies and Procedures, and amendments, were always, at minimum, available

14 to each Retailer on the Back Office (intranet), on request from LLR, and from the

15 Retailer who referred the new Retailer to LLR. [Johnson Decl. ¶ 3; Lyon Decl. ¶ 6;

16 Alvarez Decl. ¶ 7.] In addition, the Retailers with version 6.5.1 of the Retailer

17 Agreement received a link to the Policies and Procedures (that they affirmatively

18 agreed to) before they signed the Retailer Agreement. [Alvarez Decl. ¶ 10.] Plus,

19 LLR has email or DocuSign evidence that at least 20 of the Plaintiffs received

20 emails referencing and attaching or providing a location for the Policies and

21 Procedures or the First Amendment. [Alvarez Decl. ¶¶ 26, 36, 38, 40, 75, Exs. 37,

22 41-43, 56; Santillana Decl. ¶¶ 4-7.] Plaintiffs' declarations submitted on the first

23 filing of this motion shows that Retailers knew how to obtain information from

24 LLR, as each of the original four testified that they were instructed by LLR through

25 "webinars, materials on-line, videos and my up-line [Retailer]." [*See, e.g.*, Dkt. 49-

26 2, ¶ 5.]

27        Plaintiffs have also accepted the arbitration provision of the First

28 Amendment as they had the same access to the amendment as the Policies and

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD. SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

4824-4927-6254.1

- 13 -

MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-CV-02102-AB-SHK

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  Procedures—on the Back Office—and, at minimum, were notified of the

2  amendment pursuant to the Policies and Procedures when it was posted on the Back

3  Office. [Lyon Decl. ¶¶ 6-7, Exs. 30-31.] Plaintiffs implicitly conceded this point by

4  pleading why they brought their action in this court in the original complaint.

5  [Complaint ¶ 6 ("Defendants . . . have a forum selection clause . . . which selects

6  the Central District of California as the venue.").] The First Amendment includes a

7  California jurisdiction and venue clause. [Lyon Decl. ¶ 7, Ex. 31. p. 2 (First

8  Amendment); ¶ 5, Ex. 29 (Ret. Agmt. 6.5.1,§§ 25-26 (calling for same)).]

9      That they did not separately sign the Policies and Procedures or the First

10  Amendment does not change the enforceability of the arbitration provisions in those

11  documents. A party's "acceptance of an arbitration agreement does not depend

12  upon whether she signed—or even upon whether she read—the agreement."

13  *Amirhamzeh*, 2014 WL 12610227, at *2 (consumer accepted arbitration agreement

14  by continuing service, though she did not receive materials that included the

15  arbitration agreement until after enrolling in the service). Indeed, neither the FAA

16  nor California contract law requires a signed arbitration agreement. *Nghiem v. NEC*

17  *Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) (the FAA does not require a signed

18  writing and allows an agreement to arbitrate to be implied from the parties'

19  conduct); *Pinnacle Museum Tower Assn.*, 55 Cal. 4th at 236 (same, and even if the

20  party never read the arbitration clause).

21      A party's acceptance can be implied by his actions after receipt of the

22  agreement. For example, in *Quiroz v. Cavalry SPV I, LLC*, 217 F. Supp. 3d 1130,

23  1135 (C.D. Cal. 2016), the parties' card agreement, which contained an arbitration

24  clause, expressly provided that a consumer agreed to its terms by opening or using

25  an account. The court held that a consumer entered into an enforceable agreement

26  to arbitrate by opening and using an account and failing to follow the specified

27  procedure to opt-out of the arbitration agreement. *Id*. at 1135-36.

28      Here, section 1.3 of the Policies and Procedures provides that amendments

"shall be effective thirty (30) days after publication of notice that the Agreement has been modified." [Lyon Decl. ¶ 6, Ex. 30, § 1.3.] Once notified, the Retailer may then accept or reject the amendments. [*Id*.] If they elect to reject any amendment, their Agreement with LLR would be cancelled. [*Id*.] The First Amendment reiterates the same. [Lyon Decl. ¶ 7, Ex. 31, p. 3.] Section 1.3 of the Policies and Procedures further provides that if the Retailer continues to purchase or sell LLR products, accepts commission or bonus payments, or enrolls new Retailers after receiving notice of the amendments, "such actions shall be deemed acceptance of any amendments." [*Id*.]

Here, none of the Plaintiffs rejected LLR's amendments. Also, Plaintiffs (except Hayton and McGurn) further manifested their acceptance by continuing to purchase products from LLR after October 14, 2016, the date of posting of the First Amendment.[6] [A. Stidham Decl. ¶ 8-27, Exs. 62-81.]

## 2.    The arbitration provision encompasses this dispute

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Chiron Corp.*, 207 F.3d at 1131 (citation and quotation marks omitted). The scope of the claims governed by an arbitration clause also depends on the language used in the clause. *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013). While the phrase "arising out of" has been "'narrowly construed' to encompass disputes 'relating to the interpretation and performance of the contract itself,' . . . the inclusion of the phrase 'relating to' should lead to a broader interpretation." *Id*. (citing *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011)).

Here, the arbitration provision broadly governs "any controversy or claim arising out of or *relating to* the Agreement, or the breach thereof." [Lyon Decl. Exs. 28-31 (First Amendment, p. 1 (emphasis added); Policies & Procedures § 6.4; Ret.

---

[6] Hayton and McGurn, however, like most of the Plaintiffs, individually received emails attaching the First Amendment. [Santillana Decl. ¶¶ 5-7, Exs. 59-61.]

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Agmt. version 4.0, § 21; Ret. Agmt. version 6.5.1, § 25).] Plaintiffs' claims, which focus on LLR's bonus policy, buyback policy, and creation of the Retailer relationship undoubtedly arise out or relate to the Retailer Agreement or a breach thereof. *See Cayanan*, 928 F. Supp. 2d at 1207-08 (where defendants' alleged conduct was directly related to parties' contract, a statutory tort claim was subject to arbitration). The purported class includes those "who were contracted with any of the Defendants as Consultants" during a certain time period. [Dkt. 45 ¶¶ 145.] Most of the claims (violation of sections 17200 and 17500, unjust enrichment, breach of contract and good faith and fair dealing, and conversion) relate to purported changes in Defendants' refund policy, which is contained in the Policies and Procedures and is a part of the Retailer Agreements. [*Id.* ¶¶ 162; 169, 172, 177, 181, 186, 198.] Lyon Decl. Exs. 28-30 (§ 5 of Ret. Agmt. version 4.0 and § 11 of Ret. Agmt. version 6.5.1; Policies and Procedures § 3.16.3).] The claims that LLR is a pyramid scheme are based on allegations regarding requirements for inventory purchases, which stem from language in the Policies and Procedures and were allegedly encouraged by the Bonus Plan, both of which are incorporated into the Retailer Agreement. [Dkt. 45 ¶ 48, 71, 77-82; Lyon Decl. ¶¶ 3-5, Exs. 27-29 (Ret. Agmt. version 3.0 at § 13; Ret. Agmt. version 4.0 at § 15; Ret. Agmt. version 6.5.1 at § 11).] Finally, Plaintiffs' SAMP Act claim is based on the Retailer Agreements because they allege the agreements and resulting relationships were not properly registered, disclosed, or worded. [Dkt. 45 ¶ 213.]

### 3. No generally applicable contract defense invalidates the arbitration provision

Courts must enforce arbitration agreements according to their terms unless the party opposing a motion to compel can carry its burden of showing that a "generally applicable contract defense[] such as fraud, duress, or unconscionability" invalidates the arbitration agreement. *AT&T Mobility LLC v. Concepcion ("Concepcion")*, 563 U.S. 333, 339 (2011).

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

"The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Assn.,* 55 Cal. 4th at 247. The evaluation is "highly dependent on context," and the court must consider "all relevant circumstances" including the "commercial setting, purpose, and effect" of the contract or provision. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911-912 (2015). Courts are, for example, more protective of employees, because "jobseekers are more likely to face 'particularly acute' economic pressure to sign an employment contract with a predispute arbitration provision, 'for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.'" *Id*. at 919 (citing *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal. 4th 83, 115 (2000)). Consumers "would seem to require measurably less protection," because they "face significantly less economic pressure." *Id*. (citing *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 97 (2003)). Where two merchants agree to arbitrate their disputes, procedural unconscionability is even less likely. *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1181-82 (N.D. Cal. 2013); *Morris v. Redwood Empire Bancorp,* 128 Cal. App. 4th 1305, 1311, 1322 (2005) (no procedural unconscionability in agreement between bank and elderly disabled man with a "work at home business" because "it is reasonable to expect even an unsophisticated businessman to carefully read, understand, and consider all the terms of an agreement affecting [] a vital aspect of his business.").

Even where one party has superior bargaining strength, a "contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1250 (2016) (citing *Armendariz*, 24 Cal. 4th at 117). Courts "have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain.'*"

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

*Baltazar*, 62 Cal. 4th at 1245 (italics in original). "This latter qualification is important" because "[c]ommerce depends on the enforceability, in most instances, of a duly executed written contract" and cannot allow a party to "avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain." *Id.*

In California, a contract clause is unconscionable only if it is both procedurally and substantively unconscionable. *Armendariz*, 24 Cal. 4th at 99 (articulating "general contract law principles" of unconscionability).

### a.    The agreement is not procedurally unconscionable

Whether an arbitration agreement is procedurally unconscionable depends on the "circumstances of contract negotiation and formation, focusing on oppression or surprise." *Pinnacle Museum Tower Assn.,* 55 Cal. 4th at 246. Oppression, in turn, arises from an inequality in bargaining power that results in a lack of negotiation between the parties and an absence of meaningful choice for the weaker party. *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1469 (2009).

There is no oppression. *See Baltazar*, 62 Cal. 4th at 1245 (no oppression where signator "was not lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement"). Where, as here, the bargaining power "is not grossly unequal and reasonable alternatives exist," the adhesive nature of the contract does not automatically render it procedurally unconscionable. *Roman*, 172 Cal. App. 4th at 1470 n. 2. Indeed, the existence of a meaningful choice to do business elsewhere defeats any claim of oppression. *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 768 (1989), reh'g denied and opinion modified (July 21, 1989). Here, the Retailers are neither vulnerable employees nor consumers; they were merchants who freely entered the Retailer Agreement to run their own businesses and chose to contract with LLR or LuLaRoe for that purpose. The Retailers also have meaningful choice in the form of an infinite number of reasonable alternatives to start their business, including opportunities with other

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    direct marketing companies or other apparel companies.

2         Nor was there surprise. *See Baltazar,* 62 Cal. 4th at 1245 (no element of

3    surprise where signator knew about the arbitration agreement; "we do not subject

4    the contract to the same degree of scrutiny as '[c]ontracts of adhesion that involve

5    surprise or other sharp practices.'"). Here, each Retailer was provided with a copy

6    of the Retailer Agreement (which each signed) and had access to the Policies and

7    Procedures (which was repeatedly referred to in the Retailer Agreement), which

8    contained an arbitration provision (which was then repeated with minor changes in

9    the First Amendment). By signing the Retailer Agreement, Plaintiffs (with versions

10   4.0 and 6.5.1.) also expressly agreed that she had read the Policies and Procedures

11   and had another chance to review the Policies and Procedures after signing, with an

12   option to cancel the Retailer Agreement. Indeed, the Retailer could read the Policies

13   and Procedures at any time, had access to these items every time the Retailer

14   entered or placed an order in the Back Office, and could cancel the Retailer

15   Agreement. [A. Stidham ¶¶ 2-3; Lyon Decl. ¶¶ 3-5, Exs. 27-29 (Ret. Agmt. version

16   3.0 at § 7; Ret. Agmt. version 4.0 at § 24; Ret. Agmt. version 6.5.1 at § 32).

17        The First Amendment drew even more attention to the arbitration provision.

18   The First Amendment is only 3 pages long, and a substantial majority of it laid out

19   terms of the parties' arbitration agreement. The Retailers also received ample notice

20   and opportunity to review the First Amendment as it is effective 30-days after

21   publication of notice. [Lyon Decl. ¶ 6, Ex. 30 (Policies and Procedures § 1.3); ¶ 7,

22   Ex. 31 (First Amendment), p. 3; Exs. 28-29 (Ret. Agmt. version 4.0 at § 8; Ret.

23   Agmt. version 6.5.1 at § 13).

24        Plaintiffs may complain that their right to cancel after they have already paid

25   for inventory is unfair. That argument was rejected in a consumer case where the

26   customer stood to lose his entire title policy premium if he cancelled after reading

27   the arbitration agreement. *Wolschlager*, 111 Cal. App. 4th at 789. Since the

28   consumer could have obtained the arbitration agreement before paying his

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

premium, his failure to do so was no defense to arbitration. *Id*. at 791.

            **b.**       **The agreement is not substantively unconscionable**

      Substantive unconscionability arises when a provision is so "overly harsh or one-sided" that it "shocks the conscience." *Pinnacle Museum Tower Assn.*, 55 Cal. 4th at 246. "Although California courts have characterized 'substantive unconscionability' in various ways, '[a]ll of these formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' but with terms that are 'unreasonably favorable to the more powerful party.'" *Tompkins v. 23andMe, Inc*., 840 F.3d 1016, 1023 (2016); *Baltazar*, 62 Cal. 4th at 1245 ("Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: '*overly* harsh,' '*unduly* oppressive,' '*unreasonably* favorable.'"). A contract can provide a "margin of safety" to give the party with superior bargaining strength extra protection as long as it has a legitimate commercial need. *Baltazar,* 62 Cal. 4th at 1250. All that is required is a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 119.

      The parties' arbitration agreement here is mutual as it requires both parties to arbitrate their disputes and includes many of the same protections as a judicial tribunal, including application of the California Rules of Evidence and full discovery rights. [Lyon Decl. ¶ 6, Ex. 30 (Policies and Procedures, § 6.4); ¶ 7, Ex. 31 (First Amendment, pp. 1-2).] While the arbitration agreement contains two mutual carve-outs—one for protection of intellectual property rights and one for enforcement of the non-solicitation provision—there is nothing substantively unconscionable. [Lyon Decl. ¶ 6, Ex. 30 (Policies and Procedures, § 6.4); ¶ 7, Ex. 31 (First Amendment, p. 2).]

      The Retailers may also have intellectual property rights in the form of their own websites, customer lists, trade names, or trademarks to conduct their own business. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031 (9th. Cir. 2016). Even if not entirely mutual, such carve outs are justifiable for a business purpose. *Laughlin*

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

*v. VMware, Inc.*, No. 5:11-CV-00530 EJD, 2012 WL 298230, at *6 (N.D. Cal. Feb. 1, 2012).  Likewise, non-solicitation carve-outs are justifiable. *Smith v. Vmware, Inc.*, No. 15-CV-03750-TEH, 2016 WL 54120, at *4-5, n.3 (N.D. Cal. Jan. 5, 2016) (carve out for the employer's enforcement of non-solicitation, confidential information, and inventions provisions is "reasonably justified by a business purpose" and "not so one-sided as to shock the conscience"); *Laughlin*, 2012 WL 298230, at *6 (same); *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 278-80 (1985) (enforcing carve out regarding recruiting other employees).

## C.   Each Defendant may enforce the arbitration provision

Although LuLaRoe, LLC, is not a signatory to versions 4.0 and 6.5.1 of the Retailer Agreement (LLR, Inc. is) and, conversely, LLR, Inc. is not a signatory to version 3.0 of the Retailer Agreement (LuLaRoe, LLC is), each entity can nevertheless compel arbitration on all versions of the agreement because LuLaRoe, LLC and LLR, Inc. are closely related and any obligations the entities purportedly have to Plaintiffs arise from the Retailer Agreement. [M. Stidham Decl. ¶ 6; *E.g.*, Dkt. 45 ¶¶1, 181.] The same holds true for the individual defendants who are officers of LuLaRoe and LLR. [Dkt. 45, ¶¶ 35-36.]

A nonparty to an arbitration agreement may invoke arbitration under the doctrine of equitable estoppel. *Uptown Drug Co., Inc.*, 962 F. Supp. 2d at 1184. This doctrine prevents a signatory from having it "both ways"; "on the one hand, seek[ing] to hold the non-signatory liable pursuant to the duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing] arbitration's applicability because the defendant is a non-signatory." *Robinson v. Isaacs*, No. 11CV1021 JLS RBB, 2011 WL 4862420, at *2 (S.D. Cal. Oct. 12, 2011) (citations omitted) (complaint alleged nonsignatory defendants working in concert with all defendants); *see also Syscom (USA), Inc. v. Nakajima USA, Inc.*, No. CV 14-07137-AB (JPRx), 2014 WL 12695688 *3 (C.D. Cal. Dec. 3, 2014) (allowing non-signatories to enforce arbitration agreement due to allegations

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

4824-4927-6254.1

- 21 -

MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-CV-02102-AB-SHK

1    that defendants were agents and/or alter egos of each other in "committing every act

2    alleged in the complaint."); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F.

3    Supp. 2d 825, 831-41 (N.D. Cal. 2007) (nonsignatory officers and managers could

4    compel arbitration under both agency and estoppel principles).

5         Here, all of the claims are founded on the Retailer Agreements, and Plaintiffs

6    alleged that they have agreements with all the Defendants and seek to hold all

7    Defendants liable for obligations in or related to those agreements. [*See* Dkt. 45

8    (defining all defendants collectively as "Defendants"), ¶¶ 1, 181.] Plaintiffs conflate

9    all four Defendants throughout the complaint and raise interdependent misconduct

10   by Defendants by alleging all of them breached the agreements and by blurring the

11   line between the parties. All allegations against "Defendants" are thus made as to

12   all of them. [*E.g.*, Dkt. 45 ¶ 145, 154, 181.]

13        **D.    This Court may compel individual arbitration**

14        As the Supreme Court recently emphasized, "courts must 'rigorously

15   enforce' arbitration agreements according to their terms." *Am. Express Co. v.

16   Italian Colors Rest.*, 570 U.S. 228, 133 S.Ct. 2304, 2309 (2013); *see also Stolt-*

17   *Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2011). Such terms

18   include the ability to limit with whom the parties choose to arbitrate. *See Stolt-*

19   *Nielsen S. A.*, 559 U.S. at 683 ("We think it is also clear from our precedents and

20   the contractual nature of arbitration that parties may specify *with whom* they choose

21   to arbitrate their disputes." [italics in original]) and at 684 ("a party may not be

22   compelled under the FAA to submit to class arbitration unless there is a contractual

23   basis for concluding that the party *agreed* to do so." [italics in original]); *Am.*

24   *Express Co.*, 133 S.Ct. at 2309 (same).

25        The Supreme Court has also observed that arbitration's benefits—"lower

26   costs, greater efficiency and speed" –"are much less assured" in class-wide

27   arbitration, "giving reason to doubt the parties' mutual consent" to that procedure."

28   *Stolt-Nielsen S. A.*, 559 U.S. at 685. "Confidentiality becomes more difficult" in

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-CV-02102-AB-SHK

class-wide arbitrations, "potentially frustrating the parties' assumptions when they agreed to arbitrate." *Id*. at 686. Moreover, "commercial stakes of class-action arbitration are comparable to those of class-action litigation . . . even though the scope of judicial review is much more limited." *Id*. The Sixth Circuit has recognized that due process concerns in allowing an arbitrator's award to bind absent class members may also be problematic. *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 598 (6th Cir. 2013). Thus, "'[a]rbitration is poorly suited to the higher stakes of class litigation.'" *Id*. (citing *Concepcion*, 563 U.S. at 350).

District courts in the Ninth Circuit—including this Court—have followed suit in ordering arbitration to proceed on an individual basis where the parties did not explicitly agree to class arbitration. *Flores v. Swift Transportation Co*., No. CV 14–02900 AB (Ex), 2014 WL 12639088, at *4 (C.D. Cal. Oct. 3, 2014) (even in the "absence of class waivers within Plaintiff Cecil's agreement, this Court cannot presume the parties agreed to multiparty arbitration proceedings without some consensual basis."); *Chico v. Hilton Worldwide, Inc.*, No. CV 14–5750–JFW (SSx), 2014 WL 5088240, at *12 (C.D. Cal. Oct. 7, 2014) (agreement "repeatedly refer[red] to Plaintiff in the singular" and there was "no contractual or other basis for concluding that the parties agreed to class-wide arbitration").

Here, the parties did not agree to arbitrate any claims on a class-wide basis, nor does any language in the arbitration provision suggest the parties envisioned anything other than *individual* binding arbitrations:

- "In the event of a dispute *between Consultant and LLR Inc*. . . . ." [Lyon Decl. ¶¶ 4-5, Exs. 28 (Ret. Agmt. version 4.0, § 21 [emphasis added]) and 29 (2016 Retailer Agreement, § 25).]
- "The parties shall be entitled to all discovery rights permitted by the California Rules of Civil Procedure." [Lyon Decl. ¶ 7, Ex. 31 (First Amendment, p. 2); ¶ 6, Ex. 30 (Policies and Procedures, § 6.4).]
- "The arbitration shall occur within 180 days from the date on which

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

4824-4927-6254.1

- 23 -

MOTION TO COMPEL ARBITRATION
CASE NO. 5:17-CV-02102-AB-SHK

the arbitrator is appointed . . . ." [*Id.*]

- "The arbitration . . . shall last no more than 5 business days . . . ." [*Id.*] "The parties shall be allotted equal time to present their respective cases . . . ." [*Id.*].

- In the case of JAMS arbitration, the parties specified the Streamlined Rules that apply to smaller disputes. [*Id.*]

- "The parties and the arbitrator shall maintain the confidentiality of the entire arbitration and shall not disclose to any person not directly involved in the arbitration process:

  - The substance of, or basis for, the controversy, dispute, or claim;
  - The content of any testimony or other evidence presented at an arbitration hearing or obtained through discovery in arbitration
  - The terms or amount of any arbitration award; or
  - The rulings of the arbitrator on the procedural and/or substantive issues involved in the case." [*Id.*]

Proceeding with class arbitration under these parameters would be impossible. Class arbitration requires full discovery for both class and substantive issues and—assuming a class is certified—would require a full trial on the merits of class-wide claims and damages. Completing such a colossal effort in 180 days is wholly unreasonable. Nor could such a matter—involving potentially thousands of class members—be tried in a mere five days.

Moreover, conducting a class-wide arbitration and complying with the specific confidentiality requirements set forth in the Policies and Procedures and the First Amendment are mutually exclusive. [Weldon Decl. ¶ 12, Ex. 25 (JAMS Class Action Procedures, Rule 4 (providing for notice of class determination to all class members), Rule 6 (providing for notice of settlement to all class members)); ¶ 13, Ex. 26 (AAA Supplementary Rules for Class Arbitrations, Rule 9(a) ("The presumption of privacy and confidentiality in arbitration proceedings shall not

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1   apply in class arbitrations."), Rule 9(b) ("The AAA shall maintain on its website a
2   Class Arbitration Docket of arbitrations filed as class arbitrations.")).]

3        The parties did not agree to class-wide arbitration. Plaintiffs should be
4   ordered to arbitrate their claims on an individual basis.

5        **E.   The Action Should be Dismissed or Stayed**

6        The district court should compel arbitration and "stay the action or dismiss it
7   outright when, as here, the court determines that all of the claims raised in the
8   action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755
9   F.3d 1072, 1074 (9th Cir. 2014); 9 U.S.C. §§ 3, 4. *See also Target Corporation v.*
10  *Wolters Kluwer Health, Inc.*, No. CV 15-6350-AB (FFMx) 2015 WL 12646483, at
11  *1 (C.D.Cal. Dec. 16, 2015) (dismissing action for failure to mediate). "The Federal
12  Arbitration Act, although it does not explicitly govern the mediation clause in the
13  parties' contract, creates a federal policy in favor of alternative dispute resolution. .
14  . . Therefore, just as 'any doubts concerning the scope of arbitrable issues should be
15  resolved in favor of arbitration,' . . . the court resolves any doubts about the parties'
16  mediation clause in favor of mediation." *Centaur Corp. v. ON Semiconductor*
17  *Components Indus., LLC*, No. 09 CV 2041 JM (BLM), 2010 WL 444715, at *3
18  (S.D. Cal. Feb. 2, 2010) (citations omitted); 9 U.S.C. § 3.

19  **IV.   CONCLUSION**

20       Defendants respectfully request that Plaintiffs be compelled to individually
21  arbitrate their claims and that this action be dismissed, or stayed in the alternative.

22  Dated: March 9, 2018                    SNELL & WILMER L.L.P.

23

24                                          By */s/Elizabeth M. Weldon*
                                            Elizabeth M. Weldon
25                                          Attorneys for Defendants
                                            LuLaRoe, LLC, LLR, Inc., Mark
26                                          Stidham, and DeAnne Brady

27

28

SNELL & WILMER
ATTORNEYS AT LAW
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

*Stella Lemberg, et al. v. LuLaRoe, LLC and LLR, Inc.*
**USDC, Central District of California, Case No. 5:17-cv-02102-AB-SHK**

<u>**CERTIFICATE OF SERVICE**</u>

    I hereby certify that on March 9, 2018, I electronically filed the document

described as **DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO**

**INDIVIDUALLY ARBITRATE AND TO DISMISS OR STAY THIS**

**ACTION; MEMORANDUM OF POINTS AND AUTHORITIES** with the

Clerk of the Court using the CM/ECF System which will send notification of such

filing to the following:

| | |
|---|---|
| Amber L. Eck<br>Aaron M. Olsen<br>Samantha A. Smith<br>HAEGGQUIST & ECK, LLP<br>225 Broadway, Suite 2050<br>San Diego, CA 92101 | Tel:  (619) 342-8000<br>Email:<br>  ambere@haelaw.com<br>  aarono@haelaw.com<br>  samanthas@haelaw.com |
| Peter S. Pearlman<br>Kelly M. Purcaro<br>Matthew F. Gately<br>COHN LIFLAND PEARLMAN<br>HERRMANN & KNOPF LLP<br>Park 80 West – Plaza One<br>250 Pehle Avenue, Suite 401<br>Saddle Brook, NJ 07663 | Tel:  (201) 845-9600<br>Email:<br>  psp@njlawfirm.com<br>  kmp@njlawfirm.com<br>  mfg@njlawfirm.com |
| Kara M. Wolke<br>Mark Samuel Greenstone<br>Marc L Godino<br>GLANCY PRONGAY<br>  & MURRAY LLP<br>1925 Century Park East Suite 2100<br>Los Angeles, CA 90067 | Tel:  310-201-9150<br>Email:<br>  kwolke@glancylaw.com<br>  MGreenstone@glancylaw.com<br>  mgodino@glancylaw.com |
| Joshua B. Kons<br>Law Offices of Joshua B. Kons, LLC<br>939 West North Avenue, Suite 750<br>Chicago, IL  60642 | Tel: 312-757-2272<br>Email:<br>  joshuakons@konslaw.com |

    Dated: March 9, 2018                    SNELL & WILMER L.L.P.

                                            By: */s/ Elizabeth M. Weldon*
                                              Steven T. Graham
                                              William S. O'Hare
                                              Elizabeth M. Weldon
                                              Attorneys for Defendants
                                              LuLaRoe, LLC and LLR, Inc.

4841-3096-9938.1

*Snell & Wilmer*
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1

2

*Stella Lemberg, et al. v. LuLaRoe, LLC and LLR, Inc.*
**USDC, Central District of California, Case No. 5:17-cv-02102-AB-SHK**

3

## PROOF OF SERVICE

4

5

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, CA 92626-7689.

6

7

8

On March 9, 2018, I served, in the manner indicated below, a true and correct copy of the foregoing document described as **Defendants' Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This Action; Memorandum of Points and Authorities** on the interested parties in this action:

9

***See attached Service List***

10

11

12

13

☐ BY REGULAR MAIL:  I caused such envelopes to be deposited in the United States mail at Costa Mesa, California, with postage thereon fully prepaid.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service each day and that practice is followed in the ordinary course of business for the service herein attested to  (C.C.P. § 1013(a)).

14

15

☐ BY OVERNIGHT DELIVERY:  I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees. (C.C.P. § 1013(c)(d)).

16

☐ BY PERSONAL SERVICE:  I caused such envelopes to be delivered by hand to the offices of the addressees. (C.C.P. § 1011(a)(b)).

17

18

19

20

21

☒ BY ELECTRONIC MAIL:  I caused such document(s) to be delivered electronically to the following email address(es):
ambere@haelaw.com; aarono@haelaw.com; samanthas@haelaw.com; jshub@kohnswift.com; jwatson@justice4you.com; medelson@edelson-law.com; kwolke@glancylaw.com; Mgreenstone@glancylaw.com; ron@smolow.com; joshuakons@konslaw.com; AlexSchack@amslawoffice.com; natashaserino@amslawoffice.com; shannonnocon@amslawoffice.com; klandau@tcllaw.com

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

22

23

Executed on March 9, 2018, at Costa Mesa, California.

24

25

*Diane Williams*

26

Diane Williams

27

28

4822-6714-7354.1

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

*Stella Lemberg, et al. v. LuLaRoe, LLC and LLR, Inc.*
**USDC, Central District of California, Case No. 5:17-cv-02102-AB-SHK**

### *Service List*

Kelly M. Purcaro
Matthew F. Gately
Peter S. Pearlman
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663

Tel:   (201) 845-9600
kmp@njlawfirm.com
mfg@njlawfirm.com
psp@njlawfirm.com

Kara M. Wolke
Mark Samuel Greenstone
Glancy Prongay and Murray LLP
1925 Century Park East Suite 2100
Los Angeles, CA 90067

Tel:   310-201-9150
kwolke@glancylaw.com
Mgreenstone@glancylaw.com

Joshua H Watson
Law Offices of Clayeo C. Arnold APLC
111 West Ocean Boulevard 4th Floor
Long Beach, CA 90802
One South Broad Street Suite 2100
Philadelphia, PA 19107

Tel:   562-516-8270
jwatson@justice4you.com

Alexander Schack
Natash N. Serino
Shannon F. Nocon
Law Office of Alexander M. Schack
16870 West Bernardo Dr., #300
San Diego, CA  92197

Tel:  858-485-6535
AlexSchack@amslawoffice.com
natashaserino@amslawoffice.com
shannonnocon@amslawoffice.com

Joshua B. Kons
Law Offices of Joshua B. Kons, LLC
939 West North Avenue, Suite 750
Chicago, IL  60642

Tel:  312-757-2272
joshuakons@konslaw.com

Amber L. Eck
Aaron M. Olsen
Samantha A. Smith
HAEGGQUIST & ECK, LLP
225 Broadway, Suite 2050
San Diego, CA 92101

Tel:   (619) 342-8000
ambere@haelaw.com
aarono@haelaw.com
samanthas@haelaw.com

Kevin Landau
Taus, Cebulash & Landau, LLP
80 Maiden Lane, #1204
New York, NY 10038

Tel:   646-873-7654
klandau@tcllaw.com

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1

2     Jonathan Shub                          Tel:   215-238-1700
      Kohn, Swift & Graf, P.C.               jshub@ kohnswift.com
3     One South Broad Street, Suite 2100
      Philadelphia, PA 19107

4     John A. Yanchunis                      Tel:  813-275-5272
      Marcio W. Valladares                   JYanchunis@ForThePeople.com
5     201 No. Franklin St., 7th Fl.          MValladares@ForThePeople.com
      Tampa, FL  33602-3644
6

7     Marc H. Edelson                        Tel:   215-867-2399
      Edelson and Associates LLC             medelson@edelson-law.com
8     3 Terry Drive Suite 205
      Newton, PA 18940
9
      Ronald J. Smolow                       Tel:   215-579-1111
10    Law Offices of Ronald Smolow           ron@smolow.com
      3 Three Ponds Lane
11    Newtown, PA 18940

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNELL & WILMER
L.L.P. LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689