**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
PETER S. PEARLMAN (admitted *pro hac vice*)
  psp@njlawfirm.com
KELLY M. PURCARO (admitted *pro hac vice*)
  kmp@njlawfirm.com
MATTHEW F. GATELY (admitted *pro hac vice*)
  mfg@njlawfirm.com
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Telephone: (201) 845-9600
Facsimile:  (201) 845-9423

**GLANCY PRONGAY & MURRAY LLP**
  MARC L. GODINO (Bar No. 182689)
  mgodino@glancylaw.com
KARA M. WOLKE (Bar No. 241521)
  kwolke@glancylaw.com
MARK S. GREENSTONE (Bar No. 199606)
  mgreenstone@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

*Interim Co-Lead Counsel for Plaintiffs and Proposed Class*
[*Additional Counsel Listed on Signature Page*]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stella Lemberg, Jeni Laurence, Amandra Bluder, Carissa Stuckart, Dana Apana, Karen Moss Brown, Shannon Carrillo, Samantha Hall, Natalie Lien, Melissa Atkinson, Aki Berry, Cheryl Hayton, Tiffany Scheffer, Lora Haskett, Ashley Healy, Jocelyn Burke-Craig, Brittany Bianchi, Kerry Tighe-Schwegler, Jini Patton, Laura Rocke, Stephanie McGurn, and Peggy Johnson, on Behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LuLaRoe, LLC d/b/a LuLaRoe, a California Limited Liability Company; LLR, Inc., a Wyoming Corporation; Mark Stidham; Deanne Brady a/k/a Deanne Stidham; and DOES 1-10, inclusive, <br><br> Defendant. | CASE NO. 5:17-cv-02102-AB-SHK <br><br> **CLASS ACTION** <br><br> **OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO INDIVIDUALLY ARBITRATE AND TO DISMISS OR STAY THIS ACTION** <br><br> Date:  April 6, 2018 <br> Time:  10:00 am <br> Crtrm.: 7B <br> Judge.: Hon. André Birotte, Jr., U.S.D.J. |

397838.1 LULAROE_

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................1

II.     FACTUAL BACKGROUND..........................................................1

        A. The LLR, Inc and LuLaRoe, LLC "Agreements"  ..............................2

            1 Agreement 3.0: March of 2014 ........................................2

            2 Agreement 4.0: July 24, 2015 ........................................3

            3 Agreement 6.5.1: September 2, 2016..................................5

        B.  The P&P and the one-sided ADR Process ...........................................6

III.    ARGUMENT.................................................................................9

    A. Defendants Failed to Meet Their
    Burden to Prove a Valid Arbitration Agreement .......................................9

        1  Lack of Assent..........................................................9

        2  Conduct After the Fact
        Does Not Cure Lack of Assent .......................................14

    B. The Arbitration Agreement
    is Unconscionable..................................................................15

        1  The Arbitration Agreement is
        Procedurally Unconscionable ......................................16

            a.  The Arbitration Agreements
            are Oppressive Contacts of Adhesion.................................16

            b.  The Arbitration Agreement is
            Permeated with Surprise and Oppression ...........................18

        2  The Arbitration Agreement is
        Substantively Unconscionable .......................................19

            a. Lack of Mutual Obligation
            to Arbitrate .......................................................20

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

b.  The Arbitration Agreement
Imposes Exorbitant Costs ....................................................21

c.  The Arbitration Agreement
Requires Broad Confidentiality ...........................................22

3  Non-Signatories Cannot Enforce
the ADR Process ...........................................................................23

C.  The Arbitrator Decides Class Arbitrability ...........................................24

IV.   CONCLUSION ......................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Amirhamzeh v. Wells Fargo Bank, N.A.,*
  No. 14-2123, 2014 WL 12610227 (N.D. Cal. Oct. 31, 2014) ..................13, 14, 15

*Armendariz v. Found. Health Psychcare Servs.,*
  24 Cal. 4th 83 (2000) ...................................................................................16

*Ashby v. Archstone Property Mgmt., Inc.,*
  785 F.3d 1320 (9th Cir. 2015) .......................................................................9

*AT & T Mobility II, LLC v. Pestano,*
  No. 07-cv-5463, 2008 WL 682523 (N.D. Cal. Mar. 7, 2008) ...............................23

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
  475 U.S. 643 (1986) ......................................................................................9

*Baker v. Osborne Dev. Corp.,*
  159 Cal. App. 4th 884 (2008) ........................................................................21

*Boyd v. Homes of Legend,*
  981 F. Supp. 1423 (M.D. Ala. 1997) ...............................................................24

*Bruni v. Didion,*
  160 Cal. App. 4th 1272 (2008) ......................................................................18

*Chavarria v. Ralphs Grocery Co.,*
  733 F.3d 916 (9th Cir. 2013) ................................................................... 18, 22

*Cory v. Golden State Bank,*
  95 Cal. App. 3d 360 (1979) ...........................................................................14

*Davis v. Southern Energy Homes, Inc.,*
  305 F.3d 1286 (11th Cir. 2002) .....................................................................24

*First Options of Chi., Inc. v. Kaplan,*
  514 U.S. 938 (1995) .....................................................................................24

*Fitz v. NCR Corp.,*
  118 Cal. App. 4th 702 (2004) ........................................................................21

*Flores v. Transamerica HomeFirst, Inc.,*
  93 Cal. App. 4th 846 (2001) ..........................................................................15

*Free Range Content, Inc. v. Google Inc.*,
  No. 14-CV-02329-BLF,
  2016 WL 2902332 (N.D. Cal. May 13, 2016).......................................17

*Grabowski v. Robinson*,
  817 F. Supp. 2d 1159 (S.D. Cal. 2011)...............................................23

*Guess?, Inc. v. Russell*,
  No. 216-cv-780, 2016 WL 1620119 (C.D. Cal. Apr. 18, 2016)...........25

*Gutierrez v. Autowest, Inc.*,
  114 Cal. App. 4th 77 (2003) ................................................................22

*Harper v. Ultimo*,
  113 Cal. App. 4th 1402 (2003) ............................................................21

*In re Toyota Motor Corp. Unintended*
  *Acceleration Mktg.*,
  2012 WL 826854 (C.D. Cal. Mar. 12, 2012) .......................................24

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) .............................................................17

*Jackson v. S.A.W. Entm't Ltd.*,
  629 F. Supp. 2d 1018 (N.D. Cal. 2009) ...............................................23

*Karimy v. Assoc. Gen. Contractors of Am.-San Diego Chapter, Inc.*
  *Apprenticeship & Training Tr. Fund*,
  No. 08-cv-297, 2009 WL 10671523 (S.D. Cal. Mar. 30, 2009)...........21

*Kilgore v. KeyBank, Nat. Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) ...............................................................9

*Knutson v. Sirius XM Radio Inc.*,
  771 F.3d 559 (9th Cir. 2014) ...............................................................10

*Lenox MacLaren Surgical Corp.*,
  449 Fed. Appx. at 709..........................................................................24

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) .............................................................24

*Newton v. Am. Debt Servs., Inc.*,
  854 F. Supp. 2d 712 (N.D. Cal. 2012),
  aff'd, 549 F. App'x 692 (9th Cir. 2013)................................................17

*Nghiem v. NEC Elec., Inc.,*
  25 F.3d 1437 (9th Cir. 1994) ........................................................15

*Norcia v. Samsung Telecommunications Am., LLC,*
  845 F.3d 1279 (9th Cir.), *cert. denied*, 138 S. Ct. 203 (2017)........................ 9, 14

*O'Hanlon v. JPMorgan Chase Bank, N.A.,*
  2015 WL 5884844 (C.D. Cal. Oct. 7, 2015).........................................17

*Oracle America, Inc. v. Myriad Group A.G.,*
  724 F.3d 1069 (9th Cir. 2013) .......................................................25

*Parada v. Superior Court,*
  176 Cal. App. 4th 1554 (2009) ...............................................*passim*

*Poublon v. C.H. Robinson Co.,*
  846 F.3d 1251 (9th Cir. 2017) .......................................................20

*Perez v. DirecTV Grp. Holdings*, LLC,
  251 F. Supp. 3d 1328 (C.D. Cal. 2017) ...........................9, 11, 12, 13, 19

*Pinnacle Museum Tower Association v. Pinnacle*
  *Market Development (US), LLC*
  55 Cal. 4th 223 (2012) ...............................................................15

*Pokorny v. Quixtar, Inc.,*
  601 F.3d 987 (9th Cir. 2010) .....................................................16, 18

*Quiroz v. Cavalry SPV I, LLC,*
  217 F. Supp. 3d 1130 (C.D. Cal. 2016) .........................................13, 15

*Sanchez v. Valencia Holding Co., LLC*
  61 Cal. 4th 899 (2015) ...........................................................15, 17

*Sandquist v. Lebo Auto., Inc.,*
  1 Cal. 5th 233 (2016) .................................................................24

*Saravia v. Dynamex, Inc.,*
  310 F.R.D. 412, 420 (N.D. Cal. 2015)...............................................18

*Shaw v. Regents of Univ. of Cal.,*
  58 Cal. App. 4th 44 (1997) ...........................................................12

*Solo v. Am. Ass'n of Univ. Women,*
  187 F. Supp. 3d 1151 (S.D. Cal. 2016)...............................................19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ............................................................25

*Trivedi v. Curexo Technology Corp.*,
  189 Cal.App.4th 387, 116 Cal.Rptr.3d 804 (2010) ................19

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
  25 Cal. App. 3d 987 (1972) ...............................................14

*Winig v. Cingular Wireless LLC*,
  No. C 06 4297 MMC,
  2006 WL 2766007 (N.D. Cal. Sept. 27, 2006) ......................17

*Wolschlager v. Fidelity Nat. Title Ins. Co.*
  111 Cal. App. 4th 784 (2003) .............................................13

*Zullo v. Superior Court*,
  197 Cal.App.4th at 485 Cal.Rptr.3d 461 .............................19

## I.     INTRODUCTION

This putative class action seeks damages from Defendants'[1] for a pyramid scheme which harmed approximately 80,000 people.  Many victims were women with children struggling to make ends meet.  Defendants' systematically siphoned over one billion dollars from women targeted and recruited by Defendants' nefarious practices.

Defendants now seek to require these women to mediate and arbitrate their claims.  Yet, Defendants failed to establish that Plaintiffs ever assented to mediate and arbitrate.  Even if they had, the arbitration provisions they seek to enforce are unconscionable because, among other things, they lack mutuality (i.e., Defendants themselves are not required to arbitrate) and impose exorbitant costs on Plaintiffs that would preclude them from pursuing their claims. Defendants' motion must be denied.

## II.    **Factual Background**

Under the scheme, Plaintiffs[2] were recruited to become LuLaRoe Consultants ("Consultants").  [see Dkt. 45.]  Plaintiffs had to sign some version of an Independent Consultant Program Application and Agreement ("Agreement") with a LLR defendant.  [Dkt. 76, p.2]  Plaintiffs had to buy over $5,000 (wholesale) worth of leggings and clothing ("inventory") from LLR.  [Dkt. 45.]  Then, Plaintiffs were required to make monthly inventory purchases and recruit additional Consultants into the scheme in order to qualify for commissions and bonuses. *id*. Plaintiffs were promised they could quit LLR and return their unsold inventory for a refund. *id*.  This

---

[1] Defendants LuLaRoe, LLC, and LLR, Inc. ("LLR"), Mark Stidham and DeAnne Brady, and John Does 1- 10 inclusive are collectively referred to as "Defendants."

[2] Stella Lemberg, Jeni Laurence, Amandra Bluder, Carissa Stuckart, Dana Apana, Karen Moss Brown, Shannon Carrillo, Samantha Hall, Natalie Lien, Melissa Atkinson, Aki Berry, Cheryl Hayton, Tiffany Scheffer, Lora Haskett, Ashley Healy, Jocelyn Burke-Craig, Brittany Bianchi, Kerry Tighe-Schwegler, Jini Patton, Laura Rocke, Stephenie McGurn, and Peggy Johnson are collectively "Plaintiffs."

was false.[3]

Defendants harmed Plaintiffs through their respective roles in the LuLaRoe pyramid scheme.  Plaintiffs filed their Complaint against Defendants on behalf of themselves and those similarly situated for: (1) violation of California's Unfair Competition Law; (2) violation of California's Unfair Advertising Law; (3) Unjust Enrichment; (4) Breach of Contract; (5) Breach of the Covenant of Good Faith and Fair Dealing; (6) Conversion; (7) Violations of California's Seller Assisted Marketing Plan Act ("SAMP"); and (8) Violations of California Penal Code §327 and California Civil Code §1689.2.

## A. The LLR, Inc. and LuLaRoe LLC "Agreements"

Defendants seek to compel Plaintiffs into a multistep alternative dispute resolution process ("ADR Process") based upon mediation and arbitration provisions which are not found in the Agreements. [see Dkt. 76-7 - 76-12]  Defendants claim that the ADR Process sought is set forth in the Agreements and two additional documents the "LuLaRoe Policies and Procedures" ("P&P")[4] and a later amendment to same ("Amendment"). [Dkt. 76-6, p.28-65].  Defendants provided three versions of the Agreement for Plaintiffs.

### 1. Agreement 3.0: March of 2014

For Plaintiffs McGurn and Patton, it is the Agreement 3.0 version between the Consultant and LuLaRoe, LLC ("3.0").  [Dkt. 76-12, p. 25-30; 76-11, p.39-42, 76-12,

---

[3] Extensive factual background of Plaintiffs, Defendants, the claims, and harm is set forth in greater detail, and incorporated herein from, the Plaintiffs First Amended Complaint (the "Complaint").  [Dkt. 45.]

[4] The P&P is referred to by Defendants' as the "LLR, Inc. Policies and Procedures" although the title page on the document does not. *See* Dkt. 76-6, p. 3 at ¶6 and Dkt. 76-6, p. 28. The P&P produced bears the number REV2.20150603.  Dkt. 76-6, p. 28.  Defendants provide no information regarding the effective date of this P&P or whether additional versions exist(ed).

2

1   p.1-2[5]].  3.0 was available in March of 2014 on "Back Office."[6]  The 6 pages of 3.0

2   do not contain any reference to mediation or arbitration.  LuLaRoe, LLC reserves the

3   right to unilaterally change its "Policies and Procedures, Compensation Plan and

4   Wholesale Pricing Structure […] upon written notice to Consultants." [Dkt. 76-12,

5   p.26] Paragraph 13 states the "Agreement constitutes the entire agreement" but then

6   claims to incorporate by reference the: "(i) *The LuLaRoe* Policies and Procedures, (ii)

7   The LuLaRoe Compensation Plan, (iii) The LuLaRoe Consignment Program or

8   Credit Application if applicable, (iv) The Business Entity Form, if applicable […]."

9   [*id.* at p.29](emphasis added).  3.0 does not say how these 4 (or 5) documents may be

10  accessed.  3.0 does not mention "Back Office."  Defendants did not give these 4 (or

11  5) documents to Plaintiffs when they became Consultants nor in support of their

12  instant motion.  Plaintiffs' requested same the first business day following the filing

13  of the instant motion. [Declaration of Kelly M. Purcaro ("Purcaro Dec."), ¶6-9, and

14  Ex. A]  Defendants refuse to produce the documents. [*id.* at ¶10 and Ex. B].

15      **2.  Agreement 4.0: July 24, 2015**

16      For Plaintiffs Laurence, Bluder, Brown, Hayton, Scheffer, Craig, Bianchi, and

17  Healy[7] there is an Agreement version 4.0 between the Consultant and LLR, Inc.

18  ("4.0"). [Dkt. 76-6, p. 13-18]  4.0 was available July 24, 2015 until September 2,

19  2016 on "Back Office." [Dkt. 76-6, p. 2-3 at ¶4] A passing reference is made to non-

20  _____

21  [5] Patton's 3.0 is not signed by Patton nor LuLaRoe, LLC.

22  [6] "Back Office" is a portal on LLR, Inc.'s website that Consultants can access once LLR
    provides them with login information.  [Dkt. 76, p.7]. LLR did not inform 3.0 Plaintiffs of a

23  Back Office. [Dkt. 76-12, p. 25-30; 76-11, p.39-42, 76-12, p.1-2].  Defendants did not give

24  Patton the ability to **access** to Back Office until July 5, 2016, months after she became a
    Consultant, paid thousands of dollars, and had no option to cancel.  [Dkt. 76-7, p. 15 at ¶67].

25  It is unclear when Patton first accessed Back Office, Defendants records begin October 14,
    2016. [Dkt. 76-7, p. 15, Dkt. 76-19, p. 124-158, and Dkt. 76-20, p. 1-2]  It seems

26  Defendants did not give McGurn access to Back Office. [Dkt. 76-7, p. 16 at ¶¶72, 73, and

27  74].

    [7] Healy's Agreement is missing ¶¶ 8, 9, part of 10, and 11.  [Dkt. 76-11, p.5-10]

28

3

judicial dispute resolution toward the end of the 6 page long 4.0.  [Dkt. 76-6, p. 17] It states that the parties should attempt to resolve disputes through non-binding mediation, but then exempts LLR, Inc. from having to engage in such mediation if the dispute involves *disciplinary action* against the Consultant.  *id*. (emphasis added). Disciplinary action is not defined.  *id*. There is no indication of where the mediation is to take place, the length or cost of mediation, the selection of a mediator, etc.  *id*. If mediation is unsuccessful, 4.0 provides that "the dispute shall be settled totally and finally by arbitration[.]"  *id*. The Agreement does not explain who the arbitrators will be, the rules that will apply, where the arbitration will take place, or the costs. *id*.

LLR, Inc. reserves the right to unilaterally change its "Policies and Procedures, Leadership Bonus Plan and Wholesale Pricing Structure […] effective 30 days after" written notice to Consultants via "email, post[ing] on LLR INC.'s website, **and** post[ing] in Consultant's Back Office."  [Dkt. 76-6, p. 14] (emphasis added). Paragraph 15 states that this "Agreement constitutes the entire agreement" but then claims to incorporate by reference: "(i) *The LLR INC. Policies and Procedures,*[8] (ii) The LLR INC. Training Bonus Plan, (iii) The LLR Inc. Initial Inventory Fund or Credit Application if applicable, (iv) The Business Entity Form, if applicable […]." [Dkt. 76-6, p. 16 (Emphasis added).  Defendants did not give these documents to Plaintiffs at the time they became Consultants nor have they been produced in support of the instant motion. [Dkt. 76].  Plaintiffs' requested these documents. Purcaro Dec. ¶6-9, and Ex. A.  Defendants refuse to produce same. *id*. at ¶10 and Ex, B.

For Plaintiffs Lemberg, Apana, Carrillo, Berry, Haskett, Schwegler, and Rocke, only the first and last page of 4.0 are provided [Dkt. 76-7, p.27-28; p.78-79;

---

[8] The P&P Defendants submit in support of this motion is entitled "LuLaRoe Policies and Procedures" bearing the number "REV2.20150603." [Dkt. 76-6, p. 28-61]. Defendant Mark Stidham's testimony in a prior case indicates multiple version of the Policies and procedures exits. *See* Purcaro Dec. Ex. C and D.

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Dkt. 76-9, p.10-11; Dkt. 76-10, p.6-7; p.52-53; Dkt. 76-11, p.32-33; Dkt. 76-12, p.11-12.]. These pages make no reference of mediation, arbitration, or Policies and Procedures (P&P or otherwise).[9]

### 3. **Agreement 6.5.1: September 2, 2016**

For Plaintiffs Stuckart, Hall, Lien, Atkinson, and Johnson there is an Agreement version 6.5.1 between the Consultant and LLR, Inc. ("6.5.1"). [Dkt. 76-6, p. 20-26] The 7 page long 6.5.1 became available September 2, 2016. Paragraph 3 requires Consultants to initial that they agree to allow LLR to access their personal bank accounts. *id*. Paragraph 25 has a passing reference to mediation and exempts LLR INC from having to engage in mediation if the dispute involves **disciplinary** action against the Consultant. *id*. (emphasis added). Disciplinary action is not defined. It then states that unresolved disputes will go to arbitration. Unlike the banking provisions, Consultants are not required to initial near this provision. *See id*. 6.5.1 is void of details about the logistics, location, length or cost of mediation or arbitration.

Paragraph 26 states either party can go to court in the Central District of California for various forms of equitable relief relating to intellectual property rights. [Dkt. 76-6, p. 25] In paragraph 15, LLR, Inc. reserves the right to completely by-pass the mediation and arbitration process in the event that it believes the Consultant breached the agreement. *Id*. LLR Inc. can unilaterally and immediately terminate the Agreement without notice to the Consultant if, in LLR's sole judgment it determines

---

[9] Defendants concede, prior to September 2016, onboarding new Consultants was "often" handled by existing Consultants. [Dkt.76-7, pg. 3 at ¶7] As a matter of policy, new Consultants were only required to send in the first and last pages of their Agreements. [Dkt.76-7, pg. 3 at ¶7] Defendants took no action to determine whether (1) the prospective Consultant was provided the entire Agreement, (2) the Agreement had been modified by the recruiting Consultant, (3) the P&P was provided, or (4) the prospective Consultant was given any of the documents purportedly incorporated by reference into the Agreement. LLR could easily have required (at minimum) all pages returned.

1  that the Consultant did something improper or negative.  *Id*.  Paragraph 23 reserves

2  the right of LLR to withhold bonus and commissions, while still pulling money form

3  Consultant's bank accounts, if LLR decides that the Consultant breached the contract.

4  *Id*.  Paragraph 33 shortens the statute of limitations for Consultants and states that

5  Consultants waives all statute of limitations claims [Dkt. 76-6, p. 26]. Unlike the

6  banking provisions, Plaintiffs are not required to initial near any of these provisions.

7  Paragraph 11 states that it incorporates by reference "the Policies and

8  Procedures and Leadership Bonus Plan" into the Agreement and that the Consultant

9  has *or will* review them within five days. [Dkt. 76-6, p. 22] (emphasis added).  These

10  appear to be the P&P and Leadership Bonus Plan attached to Defendants' instant

11  motion.

12  **B.  <u>The P&P and the one-sided ADR Process:</u>**

13  The ADR Process is found in the P&P, a document which none of the

14  Plaintiffs signed, and some version of which Defendants claim was "available"

15  beginning June 2, 2015. [Dkt. 76-6, p.3 and p.28-61]  The P&P was "developed by"

16  LLR, Inc. for its relationship with Consultants. [Dkt. 76-6, p.29]. It is 34 pages long.

17  The ADR Process is one-sided.  It seeks to force Plaintiffs' grievances against

18  LLR, Inc. into mediation and then arbitration. [*see* Dkt. 76-6, p. 28-61] LLR, Inc.

19  carved itself out of this ADR Process by, among other things, reserving the right to

20  unilaterally take action against Consultants for breach of contract claims, i.e. claims

21  arising out of or relating to the Agreement, or any violation of any law or other

22  standard imposed by LLR. [Dkt. 76-6, p. 56-57]  P&P Section 6.1 states:

> Violation of the Agreement, These Policies and
> Procedures, violation of any common law duty, including
> but not limited to any applicable duty of loyalty, any
> illegal, fraudulent, deceptive or unethical business
> conduct, or any act or omission by an Independent
> Fashion Consultant that, in the sole discretion of the
> Company may damage its reputation or goodwill (such

28

6

> damaging act or omission need not be related to the Independent Fashion Consultant's LLR Business), may result, at LLR's discretion, in one or more of the following corrective measures"

*id.* The "measures" include but are not limited to the imposition of a fine, withholding commissions and bonuses, removal of the Consultant's downline, involuntary termination of the Agreement, and any other measure "LLR deems practicable to implement and appropriate to equitably resolve injuries caused partially or exclusively by the […] Consultants' policy violation or contractual breach. *id.* When LLR, Inc. "deems appropriate" it may "institute legal proceedings for monetary and/or equitable relief." *id.* LLR, Inc. reserves its right to avoid mediation and arbitration if it believes that a household member of a Consultant does something that would "violate any provision of the Agreement" if the Consultant did it. [Dkt. 76-6, p. 57]. In short, when a Consultant requires legal resort, she must go through a multistep ADR process, but LLR does not have to.

The P&P and Amendment also provide a carve-out for the type of claims only LLR would enforce, such as the protection of intellectual property rights and enforcement of the non-solicitation clause. *Id.* Similarly, the ADR Process attempts to incorporate a confidentiality requirement which only benefits the Defendants. *id.*

Defendants admit that, at most, only 5 Plaintiffs had access to the P&P at the time they became Consultants. [see Dkt. 76, p. 15][10]   For the remaining 17 Plaintiffs,

---

[10] Defendants produced the P&P for only Plaintiffs Stuckart, Hall, Lien, Atkinson, and Johnson. After Defendants filed the instant motion, Plaintiffs requested the Policies and Procedures in effect at the time each Plaintiff became a Consultant. Defendants refused to provide same. Purcaro Dec. ¶6-10, Ex. A & B.

7

1  Defendants did not provide access to, let alone copies of, the Policies and Procedures,
2  the P&P or otherwise.   Defendants did not mail copies of P&P to Plaintiffs.
3  Defendants provided it to a Consultant if she specifically requested it. [Dkt. 76-2, p. 2
4  at ¶3]  Defendants claim to have posted P&P in the "Back Office." Plaintiffs did not
5  have access to the Back Office (if at all) until: (1) after the Agreement was signed,
6  (2) the time to cancel had expired, (3) they already paid thousands of dollars to
7  Defendants, and (4) the log-in information was provided (if at all) by LLR.

8      The P&P and Amendment set forth an onerous, cost-prohibitive, and
9  unconscionable ADR Process. "Mediation" is on page 30 of P&P and provides that,
10  prior to arbitration, the parties should engage in mediation for up to two days. [Dkt.
11  76-6, p. 57]  "The mediator's fees and costs, as well as the costs of holding and
12  conducting mediation, shall be divided equally between the parties," paid 10 days in
13  advance of the mediation, and each party pays its owns attorney's fees, travel costs
14  and expenses. *id.* The cost of one mediator suggested by Defendants' counsel is
15  approximately $6,000 per day.  Declaration of Marc L. Godino ("Godino Decl.")  ¶
16  14.

17      Arbitration is on pages 30-31, and provides that **"any controversy or claim**
18  **arising out of or relating to the Agreement, or breach thereof, shall be resolved**
19  **by arbitration."** [Dkt. 76-6, p. 57]  (emphasis in original).  It provides for AAA or
20  JAMS rules, but does not state which rules apply or how this determination would be
21  made. *Id*. It then provides for certain federal rules which benefit Defendants only. *id*.
22  at p. 58. The Amendment contains the same language, but applies state rules to the
23  ADR Process.  [Dkt. 76-6, p. 63-65]  Neither AAA nor JAMS rules are provided.

24      Consultants throughout the nation are required to travel to a specific location[11]

25

26  _____
   [11]  Excluding Louisiana residents, either Wyoming under P&P or California under the
27  Amendment. Plaintiffs worked as Consultants from their homes through pop-up sales, in
   person or on Facebook, never having to travel.  [Dkt. 76, p. 10 and Dkt. 76-1, p. 2 at ¶4].
28
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

1   to arbitrate and all Consultants are required to "be responsible for its own costs and
2   expenses or arbitration, including legal and filing fees." [Dkt. 76-6, p. 57-8] There is
3   no further information provided about the cost of initiating arbitration or how much
4   arbitrators charge for their services. The potentially 7 day ADR Process demanded
5   by Defendants could easily exceed $20,000 per Plaintiff, Godino Dec. ¶¶ 7-16, not
6   including attorney's fees, costs, travel and expenses.

7       Plaintiffs cannot afford these costs nor do the claim amounts justify such an
8   expensive ADR Process. (*See* Declarations of Apana, Atkinson, Brown, Bluder,
9   Carrillo, Haskett, Haely, Hall, Hayton, Lauren, Lemberg, Lien, Berry, McGurn,
10  Patton, Rocke, Scheffer, Stuckart, Schwegler, Craig and Johnson ("Plaintiffs' Decs").

11  **III.   ARGUMENT**
12  **A. Defendants fail to meet their burden to prove valid arbitration agreements**
13      "[A]rbitration is a matter of contract and a party cannot be required to submit
14  to arbitration any dispute which he has not agreed so to submit." *Norcia v. Samsung*
15  *Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir.), *cert. denied*, 138 S.
16  Ct. 203 (2017) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S.
17  643, 648 (1986)). A litigant may only be denied a judicial forum and forced into
18  arbitration when: (1) a valid agreement to arbitrate exists; and (2) the arbitration
19  agreement encompasses the dispute at issue. *Kilgore v. KeyBank, Nat. Ass'n*, 718
20  F.3d 1052, 1058 (9th Cir. 2013); *Perez v. DirecTV Grp. Holdings*, LLC, 251 F. Supp.
21  3d 1328, 1336 (C.D. Cal. 2017). Defendants, seeking to compel arbitration, have the
22  burden of proving both elements. *Ashby v. Archstone Property Mgmt., Inc.*, 785 F.3d
23  1320, 1323 (9th Cir. 2015); *Perez*, 251 F. Supp. at 1336.

24      **1. <u>Lack of Assent</u>**

25      If a purported arbitration agreement fails to conform to basic contract
26  principles, it is invalid and access to the judicial forum cannot be denied. *Norcia*,
27  845 F.3d at 1284. Assent is an essential element of contract formation. *Norcia*, 845

28
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

F.3d at 1284; *see also Knutson v. Sirius XM Radio Inc.,* 771 F.3d 559, 565 (9th Cir. 2014). Defendants' claim that Plaintiffs assented to the ADR process by executing an Agreement, which in turn incorporates the P&P. This argument fails.

Defendants failed to prove Plaintiffs McGurn and Patton, agreed to the ADR Process. Their Agreements 3.0 do not contain a single reference to mediation nor arbitration, let alone demonstrate assent to same. Defendants argue that the P&P containing the ADR Process was incorporated into 3.0. This cannot be. 3.0 became available March of 2014 between *LuLaRoe, LLC* and Consultants, but P&P was between *LLR, Inc.* and Consultants and was not available until over a year later (June 3, 2015). 3.0 could not possibly incorporate a document that did not yet exist. Defendants failed, and refuse, to produce the LuLaRoe Policies and Procedures[12], along with the additional documents ostensibly incorporated by reference. See Purcaro Dec. ¶6-10, Ex A-D.

The Defendants cannot have it both ways: either the agreement is just the 6 page Agreement, or the agreement is the Agreement plus all documents incorporated by reference. If the latter, Defendants cannot force Plaintiffs into the ADR Process while at the same time refusing to produce the full agreement.[13]

Defendants failed to prove a valid agreement to the ADR Process for Plaintiffs

---

[12] P&P refers to an "Audry" system [Dkt. 76-6, p. 35, 43]. Defendants did not use Audry until about June of 2015, over a year after the 3.0 was available. Purcaro Dec Ex. C. The P&P bear the number "Rev2.2015603," which is indicative of multiple versions. [Dkt. 76-6, p.28]

[13] Defendants may argue the P&P is binding on Plaintiffs because LLR had the right to amend or because Plaintiffs became Consultants after June 3, 2016. These arguments fail. Defendants must show a valid arbitration agreement was formed and that Plaintiffs assented to the terms. It is unclear which version was in effect at the time each Plaintiff became a Consultant and if/how each was provided with same. Assuming *arguendo* that LLR could unilaterally make such changes, they must show at minimum what the original terms were, how and when the terms changed, along with how and when LLR provided each Plaintiff with the required written notice - email, posting on website *and* posting on Back Office.

10

Lemberg, Apana, Carrillo, Berry, Haskett, Schwegler, and Rocke.  Defendants bear the burden of demonstrating assent to the ADR Process and the two pages produced do not reference mediation or arbitration, let alone demonstrate assent to same. Defendants have not produced evidence of contract formation for the ADR Process. These Plaintiffs cannot be denied access to a judicial forum.

Defendants did not prove a valid agreement to the ADR Process for Plaintiffs Laurence, Bluder, Brown, Hayton, Scheffer, Craig, Bianchi, and Healy because 4.0 only makes a passing reference to mediation and arbitration but provides no further details.  It purports to incorporate by reference The LLR INC Policies and Procedures, along with 3 or 4 additional documents, none of which are provided.

Defendants fail to meet their burden to prove the existence of a valid arbitration agreement with respect to Plaintiffs Stuckart, Hall, Lien, Atkinson and Johnson.  6.5.1 does not set forth the ADR Process.   Instead, it refers to terms set forth in the P&P and thus the Court must determine whether the P&P is properly incorporated into the Agreement.  *See Perez*, 251 F. Supp. 3d at 1338.

In *Perez*, the defendant had the plaintiff sign an equipment leasing agreement ("ELA"), which included reference to a separate agreement ("Customer Agreement").  *Id.* at 1333.   The Customer Agreement was not provided to the plaintiff when signing the ELA, but stated that the Customer Agreement was online. *Id.* at 1338-39. The ELA provided that "both parties will resolve any dispute under this ELA or the Customer Agreement, using a binding arbitration procedure set forth in the Customer Agreement."  *Id.* at 1339.  The defendant claimed that the Customer Agreement would later be mailed to the plaintiff.  *Id.* at 1334.

 The defendant moved to compel arbitration, arguing that the plaintiff agreed to arbitrate by signing the ELA with an abbreviated arbitration provision and later receiving the Customer Agreement with the full arbitration terms.  *Id*. at 1338.  The court rejected these arguments.  *Id.*

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

> For an agreement to incorporate the terms of another document by reference, (1) "the reference must be clear and unequivocal"; (2) "the reference must be called to the attention of the other party and he must consent thereto"; and (3) "the terms of the incorporated document must be known or easily available to the contracting parties."

*Id.* at 1338 (quoting *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997)).  Although the arbitration agreement was called to plaintiff's attention (set apart in its own section and the word arbitration was in bold, underlined, and all caps near plaintiff's signature) it was nonetheless not properly incorporated as the reference was not clear and unequivocal and the terms of the incorporated document were not known or easily accessible to the plaintiff when she signed the ELA.  *Id.* at 1139.  Availability of the ELA online at a hyperlink provided was insufficient.  *Id.*

Here, none of the three required *Perez* factors are satisfied: (1) the reference to the ADR Process was not clear and unequivocal because 3.0, 4.0., and 6.5.1 were each self-defined on the first page as the "Agreement" between the parties.  It is fair to assume that Plaintiffs would take this to mean that the document they signed was the entire agreement. Each Agreement had multiple paragraphs addressing policies, procedures, court action related information (venue, jurisdiction, statutes of limitations waivers) and the like. Given that LLR neither clarified that the paragraphs in the Agreement were not the P&P, that separate documents contained material ADR terms, nor provided such documents to Plaintiffs, the incorporation by reference was not clear and unequivocal; (2) the reference was not called to the attention of the Plaintiffs because it was buried in a passing reference in the same font as the rest of the multipage Agreement and Plaintiffs did not consent thereto (contrast with the banking provision at the beginning of 6.5.1 requiring initials); and (3) the terms of the incorporated document, P&P, was not known or easily available to the Plaintiffs.  Plaintiffs' access to the P&P was more circumscribed than *Perez*, or cases Defendants cite, because Defendants did not actually mail the P&P to

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Plaintiffs.[14] [Dkt. 76, p. 14-16]; *see Perez*, 251 F. Supp. at 1134; *Wolschlager v. Fidelity Nat. Title Ins. Co.*, 111 Cal. App. 4th 784, 788 (2003); *Quiroz v. Cavalry SPV I, LLC*, 217 F. Supp. 3d 1130, 1135 (C.D. Cal. 2016); *Amirhamzeh v. Wells Fargo Bank, N.A.*, No. 14-2123, 2014 WL 12610227, at *1 (N.D. Cal. Oct. 31, 2014).

Defendants attempt to rectify its deficient incorporation of the P&P by now including hyperlinks to P&P in 6.5.1.[15] [Dkt. 76, p. 22] This change—demonstrating the impropriety of prior practices —at best would only impact 5 Plaintiffs' claims.[16] Even if the Court were to consider the post-September 2016 process, Defendants' argument still fails because all three *Perez* factors must be met.

---

[14] LLR attempted to distribute the P&P via e-mail *en masse* in about September October 2016.  [Dkt. No. 76-14, p. 2 at ¶¶3,4 and p. 3 ¶5] This occurred months after the five-day objection period and after Plaintiffs already paid thousands of dollars for inventory. Any argument that Plaintiffs could have rejected the terms is spurious. Even if the emails had any relevance, they were not sent to all Plaintiffs. *id.*

[15] The fact that the P&P was available in Back Office is meaningless. Back Office was not set up, if at all, until months after an illusory 5 day opt out window.

[16] To the extent the Court considers these arguments, Defendants' reliance on *Miguel v. JPMorgan Chase Bank, N.A.*, is misplaced.  There, the plaintiff signed an employment agreement that contained a "Binding Arbitration Affirmation" section, right above his signature, that clearly and unequivocally addressed the existence of a separate arbitration agreement and contained a hyperlink in that very section. No. 12-3308, 2013 WL 452418, at *4-5 (C.D. Cal. Feb. 5, 2013).  The plaintiff signed that he read, understood, and agreed to the arbitration agreement.  *id*. Here, at best the 6.5.1 Plaintiffs only signed their agreements which made a hidden reference  that they have **or would** review some Policies and Procedures.  LLR did not generate a separate "Binding Arbitration Agreement" but instead hid its unconscionable ADR Process in it's a lengthy P&P. Unlike *Miguel*, its arbitration waiver was not "bolded and underlined."  *Id.* at *5. Defendants also did not include in its Agreements an express statement that the agreement to arbitrate was a specific precondition to Plaintiffs becoming Consultants.  They further failed to provide an opt-out. Defendants may argue that an obligation to bold or highlight arbitration clauses would be preempted by the FAA, but as the *Sanchez* court notes, cases have gone both ways on this issue and see *Concepcion*, supra, 563 U.S. at pp. ——, fn. 6, 131 S.Ct. at p. 1750, fn. 6 ["States remain free to take steps addressing the concerns that attend contracts of adhesion- for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted."].)

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

## 2.  **Conduct After the Fact Does Not Cure Lack of Assent**

Defendants make much ado about Plaintiffs continuing to purchase inventory[17] after October 14, 2016, the date the First Amendment was purportedly sent to Plaintiffs via email. [Dkt. 76, p. 24] This argument is of no moment.  First, Plaintiffs had no option to reject these new terms. Second, these emails do not make clear that the P&P or Amendment are contractual terms that modify the parties' relationship. *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1290 (9th Cir.), *cert. denied*, 138 S. Ct. 203 (2017); *Cory v. Golden State Bank*, 95 Cal. App. 3d 360, 367 (1979); *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972).  Nothing in this email draws attention to the existence of an arbitration agreement - let alone to the unconscionable terms that Defendants seek to impose.[18]

Defendants' citations are inapposite.  In *Amirhamzeh v. Wells Fargo Bank, N.A.*, the plaintiff was provided a thirty-day trial period and then mailed a physical copy of a document titled "Membership Terms and Conditions."   2014 WL 12610227, at *1.  The plaintiff's initial investment was $1.00 and he was able to cancel at any time without any penalty.  *Id.* at *1.  Here, only some Plaintiffs were provided a five-day cancelation period and none were ever mailed a physical copy of the P&P or Amendment, let alone within the five-day review period.

Likely the most distinguishing factor here is that Plaintiffs did not have the ability to reject the terms and "walk away."   As set forth in the Complaint and

---

[17] Defendants failed to produce purchase records for McGurn and Hayton, and the records attached for Hall are not even her records. [Dkt. 76-17. P. 115-123 and Dkt. 76-18, p. 1-5]

[18] If these emails were meant to be legal correspondence, one would not expect an "unsubscribe" option or the words "FRIYAY!! [sic] WOO WOO!!!"  To the extent Defendants are not relying on these emails and instead claiming that copies of the P&P or Amendment in the "Back Office" constituted notice, this argument is specious as these documents were not prominently called to the Plaintiffs' attention nor did LLR post them on their website as required.  [Dkt. 76-6, p. 2-3]

14

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Declarations submitted herewith, Plaintiffs had to spend thousands of dollars on inventory to get started as Consultants. [*See* Plaintiffs' Decs]  Many of these women, already struggling to provide for their families, took out loans to buy the necessary inventory.  (DECS).  When each tried to "walk away" and get their money back, Defendants failed and refused to buy back the inventory as promised.  (DECS).  This is in stark contrast to *Amirhamzeh*, who was provided with the full $247.81 refund she requested.  2014 WL 12610227, at *1. Plaintiffs here are left holding the bag on $7,000 to $20,000 worth of LLR inventory, a substantial financial burden. (DECS).

*Quiroz v. Calvary SPV I, LLC* is distinguishable on similar grounds.  217 F. Supp. 3d 1130, 1135-36 (C.D. Cal. 2016) (enforcing terms of agreement mailed to plaintiff, the plaintiff was able to opt out of arbitration, and did not have to make a several-thousand-dollar initial investment).  *Nghiem v. NEC Electronics, Inc.* involved a plaintiff who voluntarily initiated arbitration.  25 F.3d 1437, 1439 (9th Cir. 1994).  *Pinnacle Museum Tower Association v. Pinnacle Market Development (US), LLC* does not even involve subsequent delivery of a purported agreement, but instead involves whether an *existing* agreement to arbitrate by all of the members of a condominium association could be binding on that association.  55 Cal. 4th 223, 232, 240 (2012).

**B. <u>The Arbitration Agreement is Unconscionable</u>**

Even if there was a validly formed agreement to arbitrate, which there is not, the ADR Process itself is unconscionable and cannot be enforced.

Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sanchez v. Valencia Holding Co., LLC* 61 Cal. 4th 899, 910 (2015). A contractual clause is unenforceable if it is both procedurally and substantively unconscionable.  *Flores v. Transamerica HomeFirst, Inc*., 93 Cal. App. 4th 846, 853 (2001).  Procedural unconscionability focuses on "the manner in which the contract

was negotiated and the circumstances of the parties at that time," specifically, the factors of oppression and surprise; substantive unconscionability "concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner." *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1568, 1570 (2009). Both procedural and substantive unconscionability are required to invalidate an arbitration agreement, but not to the same degree. *Id.* "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

## 1. **The Arbitration Agreement is Procedurally Unconscionable**

Defendants' ADR Process is procedurally unconscionable because they are contracts of adhesion permeated with oppression and surprise.

### a. *Arbitration Agreements are Oppressive Contracts of Adhesion*

The ADR Process is hidden in a contract of adhesion, the Agreement and P&P, because it is presented on a take-it-or-leave-it basis. Plaintiffs were not given the opportunity to negotiate the terms, nor was there any option or guidelines for opting out of it. *See Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 113 (2000) (a standardized contract, drafted by the party with greater bargaining power and that "relegates the subscribing party only the opportunity to adhere to the contract or reject it" is inherently oppressive); *Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 996 (9th Cir. 2010) ("a contract is procedurally unconscionable under California law if it is a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it") (internal quotation and citation omitted).

Defendants erroneously argue that the ADR Process is not procedurally unconscionable, claiming Plaintiffs had the opportunity to reject the Agreement in its entirety and "do business elsewhere" with "other direct marketing companies or

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

apparel companies." [Dkt. 76, p. 27]   Courts in the Ninth Circuit have repeatedly rejected this argument, explaining that the option to do business elsewhere is a "false choice, not the kind of non-oppressive, meaningful choice that the case law requires" and such contracts can still be procedurally unconscionable. *O'Hanlon v. JPMorgan Chase Bank, N.A.*, 2015 WL 5884844, at *3 (C.D. Cal. Oct. 7, 2015) (internal quotation and citation omitted); *see also Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) ("the availability of other options does not bear on whether a contract is procedurally unconscionable"). Plaintiffs were never given the opportunity to negotiate the terms of the Agreement or P&P and never presented with the chance to opt-out of arbitration. *See, e.g., O'Hanlon*, 2015 WL 5884844, at *3. Plaintiffs are analogous to employees in that they became Consultants to earn desperately needed income for their households. Contracts of adhesion are considered more unconscionable for employees who have limited choices.

Existence of alternative goods, services, or opportunities does not negate procedural unconscionability.  In *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 723 (N.D. Cal. 2012), aff'd, 549 F. App'x 692 (9th Cir. 2013), the Court rejected defendant's argument in a class action involving debt settlement services that plaintiff could not satisfy procedural unconscionability because of the availability of other market alternatives to defendants' product because  "[t]his argument ignores California case law finding that 'use of a contract of adhesion establishes a minimal degree of procedural unconscionability notwithstanding the availability of market alternatives.' *Sanchez v. Valencia Holding Co., LLC,* 201 Cal.App.4th 74, 91, 135 Cal.Rptr.3d 19 (2011) (rejecting the defendant's argument that there was no procedural unconscionability because the plaintiff could have bought his car from a dealer who did not require arbitration)." See also *Free Range Content, Inc. v. Google Inc.*, No. 14-CV-02329-BLF, 2016 WL 2902332, at *7 (N.D. Cal. May 13, 2016); and *Winig v. Cingular Wireless LLC*, No. C 06 4297 MMC, 2006 WL 2766007, at *4

(N.D. Cal. Sept. 27, 2006).

### b.   *The ADR Process is Permeated with Surprise and Oppression*

"Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party."  Chavarria *v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013)*; Parada*, 176 Cal. App. 4th at 1571 (procedural surprise occurs when the provision is "hidden in a prolix printed form or otherwise beyond the reasonable expectation of the weaker party").

Here, the ADR Process is contained across three (or possibly more) lengthy documents – the Agreement, P&P, and Amendment. Defendants failed to show that 17 of the 22 Plaintiffs ever received these documents.[19] *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1293, (2008), *as modified* (Mar. 24, 2008) (finding procedural unconscionability where the "arbitration provisions are not distinguished from the rest of the booklet by either bolding or capitalization" and "[m]ost important, plaintiffs were **never asked to sign or initial** the booklet, much less the arbitration provisions; they were merely asked to sign the one-page application")(emphasis added); *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 420 (N.D. Cal. 2015) (finding procedural unconscionably where provisions were formatted identically to the rest of the provisions in the agreements, and they lay buried in the middle of more than ten pages of mostly boilerplate language).  It does not explain who the mediator and then arbitrators will be, what rules will apply in both process, where the mediation and/or arbitration will take place, or the costs of the mediation and arbitration.   The Agreement refers to P&P, but as set forth above, the P&P was not properly incorporated into the Agreements and Defendants offer no explanation as to why the ADR Process was not spelled out in the Agreements.  *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) (explaining that the degree of procedural

---

[19]   3.0 contains no reference at all to arbitration, while 4.0 (when provided in full) and 6.5.1 only contain a brief reference to arbitration, without differentiating it from other text, at the end of a single-spaced document.

unconscionability was increased where the agreement did not include a "full description of the non-binding conciliation and binding arbitration processes"); *Perez*, 251 F. Supp. 3d at 1345 (finding unfair surprise and an increased degree of procedural unconscionability where the defendant presented a more detailed arbitration agreement at a later date); *Chavarria*, 733 F.3d at 923 ("the degree of procedural unconscionability is enhanced when a contract binds an individual to later-provided terms"). Solo v. Am. Ass'n of Univ. Women, 187 F. Supp. 3d 1151, 1162 (S.D. Cal. 2016) ("Defendant AAUW-CA drafted the agreement and failed to include terms that are material to ensuring the agreement is reasonably fair to both parties. Failure to reference any arbitration rules or include reference to costs in the arbitration supports a finding of procedural unconscionability.") *See Zullo*, 197 Cal.App.4th at 485, 127 Cal.Rptr.3d 461; *Trivedi v. Curexo Technology Corp*., 189 Cal.App.4th 387, 393, 116 Cal.Rptr.3d 804 (2010).)"

The P&P itself is equally unconscionable. The ADR Process provisions appear at pages 30-31 and do not disclose the great cost of pre-arbitration mediation or arbitration itself (discussed in more detail below). [Dkt. 76-6, p. 57-58]; *see Parada*, 176 Cal. App. 4th at 1572 (finding surprise where the agreement did not provide copies of the JAMS rules or fee schedule). Procedural unconscionability also includes "the manner in which the contract was negotiated and the circumstances of the parties at that time," and as such focuses on whether the agreement was obtained through oppression and surprise. The Plaintiffs are undeniably surprised why the ADR process (*see* Plaintiffs decs).[20]

**2.    The Arbitration Agreement is Substantively Unconscionable**

"A provision is substantively unconscionable if it involves contract terms that

---

[20] Reliance on the Amendment would constitute an even greater surprise. It did not exist when Plaintiffs became Consultants and could not have been reviewed by them. With contracts of adhesion, the stronger party must call the weaker party's attention to the important term, not obfuscate it. *See* Parada, 176 Cal. App. 4th at 1571.

19

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

are so one-sided as to shock the conscience or that impose harsh or oppressive terms." *Parada*, 176 Cal. App. 4th at 1573 (internal quotation and citation omitted). "Courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement," incorporation by reference, without more, does not affect the finding of procedural unconscionability. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017)(quoting *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1406, 7 Cal.Rptr.3d 418 (2003)). Even without heightened scrutiny, the ADR Process is substantively unconscionable.

### a.    *Lack of a Mutual Obligations to Arbitrate*

The lack any of mutuality in the ADR Process is fatally unconscionable.  LLR does not have to participate in the ADR Process at all, not even for breach of contract. Yet Plaintiffs are forced to jump through the hoops of a mediation and arbitration, all at their own expense, while paying their anticipated costs 10 days in advance.  Defendants' carve-out for themselves all claims that it can bring in court or simply act unilaterally to correct, (see "Disciplinary Sanctions") while requiring Consultants to always mediate and then arbitrate their claims.  The P&P even allows LLR to sue Consultants if *a member of the Consultant's household* does something that, if done by Plaintiff, would breach the contract or some hidden LLR Policy.[21]

This  ADR  Process  one-sidedness  is  the  epitome  of  unconscionability,

---

[21] While paling in comparison to the outright exclusion from the ADR Process for LLR, the P&P also contains thinly veiled "either party" language allowing for court action, found in places referring to relief from a court for claims seeking "a writ of attachment, a temporary injunction, […] protect its intellectual property rights and/or enforce its rights under the non-solicitation provision of the Agreement." [Dkt. 76-6, p. 57-58]  But these rights belong only to LLR. The non-solicitation provision also inures only to Defendants' benefit. Similarly, all of the intellectual property rights identified belong to Defendants, such as LLR's trade names, trademarks, service marks, and copyrighted material, [Dkt. 76-6, p. 54-55]

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

exemption for only one party (the drafting party and stronger party) from arbitration lacks mutuality and is substantively unconscionable.  *See Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 725 (2004) (finding an arbitration agreement unfairly one-sided, as it required one party—but not the other—to arbitrate all claims arising out of the same transaction); *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1408 (2003) (finding an arbitration agreement one-sided where the rules specified in the arbitration provision limited the remedies available to the weaker party, the consumer, but did not hinder the remedies available to the stronger drafting party, the service provider); *Karimy v. Assoc. Gen. Contractors of Am.-San Diego Chapter, Inc., Apprenticeship & Training Tr. Fund*, No. 08-cv-297, 2009 WL 10671523, at *3 (S.D. Cal. Mar. 30, 2009); *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 896 (2008).  This lack of mutuality renders the ADR Process substantively unconscionable.[22]

### b.   *The Arbitration Agreement Imposes Exorbitant Costs*

Defendants targeted women, most of whom were struggling to provide for their families, under their pyramid scheme. [*see* Plaintiffs Decs]  Plaintiffs paid thousands of dollars to Defendants, mostly by loans, credit cards, or withdrawing from modest savings. *Id.* The ADR Process is unconscionable as it imposes excessive costs upon Plaintiffs, a population that cannot afford same. Id. The ADR Process is

---

[22] Defendants' offer no business justification, as they cannot, for this one-sided ADR Process. As the court in *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1536–37, 60 Cal. Rptr. 2d 138, 148–49 (1997), as modified (Feb. 10, 1997) explained "unless the 'business realities' that create the special need for such an advantage are explained in the contract itself…must be factually established." There is no justification nor factual support as to why LLR needs the advantage of avoiding any legal forum while forcing Plaintiffs to spend thousands in ADR. See *Id.* (finding arbitration provision carve outs for intellectual property carve unjustified and unconscionable); *see also Martin v. Ricoh Americas Corp.*, No. C-08-4853 EMC, 2009 WL 1578716, at *4 (N.D. Cal. June 4, 2009); *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 177, 116 Cal.Rptr.2d 671 (2002); *Randazzo Enterprises, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 5:14-CV-02374-EJD, 2014 WL 6997961, at *6 (N.D. Cal. Dec. 11, 2014)

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

unconscionable because its costs are not justified by for these claims.

Before even entering arbitration, the agreement requires Consultants—whether residing in Hawaii, Alaska, or Maine—to mediate in California (or Wyoming) in a proceeding that can last up to two days, where "the mediator's fees and costs, as well as the costs of holding and conducting mediation, shall be divided equally between the parties" and paid 10 days in advance. [Dkt. 76-6, p. 57-58] The cost to mediate and arbitrate Plaintiffs' claims are conservatively $10,000 to $20,000.  *See* Godino Dec. ¶¶ 8-16.  It is substantively unconscionable to impose costs of at least $10,000 on Plaintiffs to arbitrate and mediate their claims, particularly where, as evidenced by Plaintiffs' declarations, many Plaintiffs' claims fall within that range and Plaintiffs are already in significant debt with limited earnings. [*See* Plaintiffs' Decs]; *see also Parada*, 176 Cal. App. 4th at 1582 ($3,200 daily arbitration cost to be borne by plaintiff to be substantively unconscionable); *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 90 (2003), *as modified on denial of reh'g* (Jan. 8, 2004) ("it is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high."); *Chavarria*, 733 F.3d 916 ($3,500-$7,500 daily cost of arbitration to be borne by plaintiff was unconscionable particularly where the "cost likely dwarfs the amount of Chavarria's claims").   These exorbitant costs render the ADR Process unconscionable because it denies Plaintiffs legal recourse against Defendants.

### c.   *The Arbitration Agreement Requires Broad Confidentiality*

The P&P specifies that "[t]he parties and the arbitrator shall maintain the confidentiality of the entire arbitration process" and shall not disclose any information pertaining to the claims, evidence, issues, rulings, or awards.  [Dkt. 76-14, p. 38]This confidentiality obligation is one-sided, it only benefits Defendants by creating the advantage of being a repeat participant in arbitration regarding the same

issues, acquiring institutional knowledge as to how to arbitrate them, while Plaintiffs are not repeat players and cannot call on the experience of their predecessors for assistance. *See Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1176 (S.D. Cal. 2011) (finding a confidentiality provision unconscionably favored the drafting party, and prevented plaintiffs from assisting other plaintiffs in resolving their claims); *AT & T Mobility II, LLC v. Pestano*, No. 07-cv-5463, 2008 WL 682523, at *7 (N.D. Cal. Mar. 7, 2008) (confidentiality provision unconscionable because such clauses allow a defendant "to place itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, [defendant] accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract").[23]   The ADR Process is unconscionable and unenforceable.[24]

### 3. Non-Signatories Cannot Enforce the ADR Process

Defendants concede that LuLaRoe, LLC, is not a signatory to 4.0 and 6.5.2 and, LLR, Inc. is not a signatory to 3.0.  [Dkt. 76, p. 30].  It is undisputed that

---

[23] The ADR Process also requires Consultants to bring their claims within one year and requires them to waive any statute of limitations ("SOL") claims.  Under California law, the applicable SOL for Plaintiffs' various claims range from three to four years. This one year SOL provision significantly shortens the limitations period for Plaintiffs' claims and is, therefore, substantively unconscionable.

[24] The ADR Process here is so permeated with unconscionability that the unconscionable sections cannot be severed. *See Jackson v. S.A.W. Enter., Ltd.*, 629 F. Supp. 2d 1018, 1030 (N.D. Cal. 2009).  "A court is not authorized to affirmatively add terms" to reform a contract.  *Id.*  If the terms cannot be severed to remove the unconscionability, then the contract cannot be enforced. *Id.*

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

1  defendants Mark Stidham and DeAnne Brady are not signatories to any version of the

2  Agreements.  Nevertheless, Defendants argue that each defendant, including the non-

3  signatory defendants, may enforce the ADR Process under the equitable estoppel

4  doctrine. [Dkt. 76, 30-31.  However, as the case law makes clear, a non-signatory to

5  an arbitration agreement may only compel arbitration of a signatory's claims under

6  very limited and specific circumstances.  *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d

7  1042, 1046 (9th Cir. 2009) ("extending" equitable estoppel in favor of non-

8  signatories in an arbitration context exists in "very narrow confines.").

9  Defendants seemingly contend that Plaintiffs should be forced to arbitrate their

10  claims with the non-signatory defendants because Plaintiffs' claims would not exist

11  but for their execution of the Agreements.  (Dkt. 76, p. 30-31).  Courts around the

12  country disagree, concluding that a mere but for test does not supply the intimately

13  inter-twined relationship upon which equitable estoppel is dependent.  *See In re*

14  *Toyota Motor Corp. Unintended Acceleration Mktg.*, 2012 WL 826854, at *22 (C.D.

15  Cal. Mar. 12, 2012); *Lenox MacLaren Surgical Corp.*, 449 Fed. Appx. at 709; *Boyd*

16  *v. Homes of Legend*, 981 F. Supp. 1423, 1433 (M.D. Ala. 1997), abrogated in part on

17  other grounds by *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1286, 1271 (11th

18  Cir. 2002); *Mundi*, 555 F.3d 1042, 1047 (9th Cir. 2009).

19  **C.  <u>The Arbitrator Decides Class Arbitrability</u>**

20  If the Court is inclined to grant Defendants' motion to compel arbitration, the

21  next issue to be decided is whether or not the arbitration can proceed as a class

22  arbitration. "Who has the primary power to decide arbitrability turns upon what the

23  parties agreed about that matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938,

24  943 (1995).  The P&P makes clear that the arbitrator decides issues of arbitrability.

25  Lyon Decl. Ex. C ¶ 6.4 ("***any controversy*** or claim arising out of ***or relating to*** the

26  Agreement … shall be settled by arbitration." (emphasis added). Such a broad

27  arbitration clause necessarily includes issues of arbitrability.  *Sandquist v. Lebo*

28

24

*Auto., Inc.*, 1 Cal. 5th 233, 248 (2016) (finding, under California law, that broad arbitration clauses allocate the decision on the availability of class arbitration to the arbitrator, rather than reserving it for a court).  Incorporation of the AAA's model rules for arbitration constitutes clear and unmistakable evidence that the parties intended to delegate gateway questions to an arbitrator.[25]  *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).  Indeed, the Supreme Court clarified that *the arbitrator* and *not a court* should decide issues involving class arbitration.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 678–79 (2010).

Accordingly, the parties have clearly and unmistakably submitted class arbitrability to the arbitrator.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety.

---

[25] The Ninth Circuit has not addressed whether incorporation of the AAA's model rules is sufficient to delegate to an arbitrator the question of whether a given arbitration agreement permits class-wide arbitration, but the weight of district court authority has found that it is.  *See, e.g., Guess?, Inc. v. Russell*, No. 216-cv-780, 2016 WL 1620119, at *6 (C.D. Cal. Apr. 18, 2016) (noting the current state of Ninth Circuit law and holding that absent further, binding guidance in the Ninth Circuit, incorporating the AAA's Model Rules for Arbitration presumes that the parties agreed to delegate the question of whether a party could pursue their claims on a class-wide basis to an arbitrator).

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

RESPECTFULLY SUBMITTED,

*/s/ Marc L. Godino*

Date: March 19, 2018

**GLANCY PRONGAY AND MURRAY LLP**
Marc L. Godino (182689)
mgodino@glancylaw.com
Kara M. Wolke (241521)
 kwolke@glancylaw.com
Mark Samuel Greenstone (199606)
 Mgreenstone@glancylaw.com
1925 Century Park East-Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Fax: (310) 201-9160

**COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP**
Kelly M. Purcaro
 (*Admitted Pro Hac Vice*)
Matthew F. Gately
 (A*dmitted Pro Hac Vice*)
Peter S. Pearlman
 (*Admitted Pro Hac Vice*)
Park 80 West - Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Telephone: (201) 845-9600

**LAW OFFICES OF
CLAYEO C. ARNOLD APLC**
Joshua H. Watson
jwatson@justice4you.com
111 West Ocean Boulevard, 4th Floor
Long Beach, CA 90802
Telephone: (562) 516-8270
Fax: (916) 924-1829

26

OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

**LAW OFFICES OF ALEXANDER M. SCHACK**

Alexander Schack (SBN 99126)
 AlexSchack@amslawoffice.com
Natash N. Serino (SBN 284711)
 natashaserino@amslawoffice.com
Shannon F. Nocon
 shannonnocon@amslawoffice.com
16870 West Bernardo Drive, Suite 400
San Diego, CA 92197
Telephone: (858) 485-6535
Fax: (858) 485-0608

**LAW OFFICES OF JOSHUA B. KONS**

Joshua B. Kons (SBN 244977)
 joshuakons@konslaw.com
939 West North Avenue, Suite 750
Chicago, IL 60642
Telephone: (312) 757-2272
Fax: (312) 757-2273

**HAEGGQUIST & ECK, LLP**

Amber L. Eck (177882)
 ambere@haelaw.com
Aaron M. Olsen (259923)
 aarono@haelaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Fax:  (619) 342-7878

**TAUS, CEBULASH
 & LANDAU, LLP**

Kevin Landau
 klandau@tcllaw.com
80 Maiden Lane-Suite 1204
New York, NY 10038
Telephone: (646) 873-7654
(212) 931-0703

27

**KOHN SWIFT AND GRAF PC**
Johnathan Shub
  jshub@kohnswift.com
One South Broad Street-Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-170
Fax: (215) 238-1968

**MORGAN AND MORGAN COMPLEX
LITIGATION GROUP**
John A. Yanchunis
Marcio W. Valladares
201 North Franklin Street-7[th] Floor
Tampa, FL 33602-3644
Telephone: (813) 275-5272/(813) 223-5505

**EDELSON AND ASSOCIATES LLC**
Marc H. Edelson
  medelson@edelson-law.com
3 Terry Drive-Suite 205
Newton, PA 18940
Telephone: (215) 867-2399
Fax: (267) 685-06776

Ronald Jay Smolow, Esq.
  ron@smolow.com
3 Three Ponds Lane
Newton, PA 18940-3001
Telephone: (215) 579-1111
Fax: (215) 579-7949

28

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On March 19, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 19, 2018, at Los Angeles, California.

*s/ Marc L. Godino*
Marc L. Godino

# Mailing Information for a Case 5:17-cv-02102-AB-SHK Stella Lemberg et al v. LuLaRoe, LLC et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Alejandro S Angulo**
  aangulo@rutan.com,scook@rutan.com

- **Bradley A Chapin**
  bchapin@rutan.com,dcorwin@rutan.com

- **Kathryn Diane Zajec Domin**
  kdomin@rutan.com,lfenwick@rutan.com

- **Amber L Eck**
  ambere@haelaw.com,winkyc@haelaw.com,nadiak@haelaw.com

- **Matthew F Gately**
  mfg@njlawfirm.com

- **Samantha Lynn Goates**
  sgoates@rutan.com,jmullins@rutan.com

- **Marc L Godino**
  mgodino@glancylaw.com,info@glancylaw.com,marc-godino-1414@ecf.pacerpro.com

- **Steven Thomas Graham**
  sgraham@swlaw.com,sarmienta@swlaw.com

- **Mark Samuel Greenstone**
  MGreenstone@glancylaw.com,info@glancylaw.com

- **Jing Hua**
  jhua@swlaw.com

- **William S O'Hare , Jr**
  wohare@swlaw.com,chiggins@swlaw.com,rmckay@swlaw.com

- **Aaron M Olsen**
  aarono@haelaw.com,winkyc@haelaw.com

- **Peter S Pearlman**
  psp@njlawfirm.com,mdms@njlawfirm.com

- **Kelly M Purcaro**
  kmp@njlawfirm.com,mb@njlawfirm.com

- **Jonathan Shub**
  jshub@kohnswift.com,rgarvey@kohnswift.com,kwilson@kohnswift.com,klaukaitis@kohnswift.com,ksgintern@kohnswift.com

- **Samantha A Smith**
  samanthas@haelaw.com,andread@haelaw.com

- **Elizabeth M Weldon**
  eweldon@swlaw.com,dmwilliams@swlaw.com

- **Kara M Wolke**

kwolke@glancylaw.com,info@glancylaw.com,kara-wolke-0535@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)