JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STELLA LEMBERG, et al.<br><br>        Plaintiffs,<br><br>v.<br><br>LULAROE, LLC D/B/A LULAROE, a California Limited Liability Company; LLR, INC., a Wyoming Corporation; MARK STIDHAM; DEANNE BRADY A/K/A DEANNE STIDHAM; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.:  ED CV 17-02102-AB (SHKx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

**I.  INTRODUCTION**

Pending before the Court is Defendants LuLaRoe, LLC, LLR, Inc., Mark Stidham, and DeAnne Brady's ("Defendants") Motion to Compel Plaintiffs[1] to

---

[1] The term "Plaintiffs" refers to Stella Lemberg, Jeni Laurence, Amandra Bluder, Carissa Stuckart, Dana Apana, Karen Moss Brown, Shannon Carrillo, Samantha Hall, Natalie Lien, Melissa Atkinson, Aki Berry, Cheryl Hayton, Tiffany Scheffer, Lora Haskett, Ashley Healy, Jocelyn Burke-Craig, Brittany Bianchi, Kerry Tighe-Schwegler, Jini Patton, Laura Rocke, Stephenie McGurn, and Peggy Johnson.

Individually Arbitrate and to Dismiss or Stay this Action. (Dkt. No. 76 (contains "Notice of Mot." & "Mot.").) For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion.

## II. BACKGROUND

On October 13, 2017, Plaintiffs Stella Lemberg, Jeni Laurence, Amandra Bluder, and Carissa Stuckart filed the original complaint against LuLaRoe, LLC and LLR, Inc. (collectively, "LLR"). (Dkt. No. 1 ("Compl.").) Plaintiffs' claims center upon LLR's purported "multi-level marketing scheme, whereby [LLR] created a 'direct-buyer' system so consumers must go through 'representatives' or 'consultants'[2] to buy [LLR's] clothing products." (Compl. ¶ 1.) Plaintiffs were all LLR consultants. (Compl. ¶¶ 7–10.) "To be a consultant, however, [LLR] requires an initial expenditure upwards of $5,000 for a start-up inventory kit of clothing and other promotional materials." (Compl. ¶ 1.) According to Plaintiffs, "[a]s bait to lure consultants to sign up and/or to purchase more inventory, in April 2017, [LLR] promised consultants they could cancel their agreements with [LLR] and be refunded 100% of the wholesale amount of inventory purchased, including shipping charges." (Compl. ¶ 1.) Plaintiffs claim that "[t]he 100% refund had no conditions or exceptions attached." (Compl. ¶ 1.) Plaintiffs assert that LLR "reneged on its end of the bargain[,]" and "[i]nstead of honoring its 100% buyback and free shipping agreement, [LLR] is not providing free shipping[,] and is honoring at most a 90% refund[,] . . . thereby cheating Plaintiffs and the Class out of thousands of dollars." (Compl. ¶ 2.)

Plaintiffs' original Complaint alleges claims for: (1) violation of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, et seq.; (2) violation of California's Unfair Advertising Law, Business & Professions Code §§ 17500, et seq.; (3) quasi-contract (a/k/a unjust enrichment); (4) breach of contract;

---

[2] LLR "representatives" and "consultants" are also referred to as "retailers."

(5) breach of the covenant of good faith and fair dealing; and (6) conversion. (*See* Compl.)

Plaintiffs filed their First Amended Complaint ("FAC") on January 12, 2018. (Dkt. No. 45 ("FAC").) The FAC adds several new Plaintiffs, all of whom were LLR consultants.[3] (FAC ¶¶ 90–30.) Plaintiffs' FAC includes new allegations that LLR is an illegal pyramid scheme that violates California's Seller Assisted Marketing Plan Act §§ 1812.200, et seq. Plaintiffs' FAC also adds claims for violations of California Penal Code § 327 and California Civil Code § 1689.2. (Dkt. No. 45 ("FAC").) Plaintiffs' FAC adds two new Defendants— Mark Stidham, co-founder of LuLaRoe, LLC and current CEO of LLR, Inc., and DeAnne Brady, co-founder and current CEO of LuLaRoe, LLC. (FAC ¶¶ 35–36.)

On March 9, 2018, Defendants filed the instant Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This Action. (Mot.) On March 19, 2018, Plaintiffs opposed. (Dkt. No. 81 ("Opp'n").) On March 30, 2018, Defendants replied. (Dkt. No. 87 ("Reply").)

The Court held a hearing on the instant Motion on April 13, 2018, and took the Motion under submission. (Dkt. No. 92.)

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Any arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable" and a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may file a petition in a district court for an order compelling arbitration. 9 U.S.C. §§ 2, 4.

---

[3] The FAC adds the following additional named Plaintiffs: Dana Apana, Karen Moss Brown, Shannon Carrillo, Samantha Hall, Natalie Lien, Melissa Atkinson, Aki Berry, Cheryl Hayton, Tiffany Scheffer, Lora Haskett, Ashley Healy, Jocelyn Burke-Craig, Brittany Bianchi, Kerry Tighe-Schwegler, Jini Patton, Laura Rocke, Stephenie McGurn, and Peggy Johnson. (*See* FAC.)

"[U]pon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

"By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The FAA evinces a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1985). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted).

When deciding a motion to compel arbitration, the Court must look to whether (1) a valid agreement to arbitrate exists, and (2) whether the dispute falls within the scope of the arbitration clause. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991). Under the FAA, "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

**IV.  DISCUSSION**

Defendants request that the Court (1) compel Plaintiffs "to arbitrate [their claims] on an individual basis[;]" "and (2) dismiss Plaintiffs' [FAC] for: (a) failure to arbitrate the dispute, and (b) failure to mediate, which is a condition precedent to arbitrate." (Notice of Mot. at 3.) "In the alternative, Defendants move the [C]ourt for an order staying this action pending arbitration and ordering [] Plaintiffs to arbitrate on an individual basis." (Notice of Mot. at 3.)

Defendants argue that Plaintiffs should each be compelled to arbitrate their claims on an individual basis because each Plaintiff entered into one of three versions of a "Retailer Agreement"—versions 3.0, 4.0, and 6.5.1—all of which incorporate by reference LLR, Inc.'s Policies and Procedures ("Policies and Procedures"), which contains an arbitration provision. (Mot. at 2–3.) Additionally, Defendants argue that versions 4.0 and 6.5.1 of the "Retailer Agreement" expressly state that the parties shall settle disputes "by arbitration" "[i]f the parties are unsuccessful in resolving their dispute through mediation." (Mot. at 2 (citing Declaration of Justin Lyon in Support of Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This Action ("Lyon Decl."), Ex. 29 ("Ret. Agmt. 6.5.1"), Ex. 28 ("Ret. Agmt. 4.0")) (internal quotation marks omitted).) Finally, Defendants argue that the First Amendment to the Policies and Procedures ("First Amendment") binds Plaintiffs to arbitration because "[t]he First Amendment contains the same detailed arbitration provision as the Policies and Procedures." (Mot. at 5 (citing Lyon Decl., Ex. 31); *see also* Mot. at 13–14.)

Defendants argue that Plaintiffs should be compelled to arbitrate their claims on an individual basis because they have accepted the arbitration provision, the arbitration provision encompasses the dispute, and no generally applicable contract defense invalidates the arbitration provision. (Mot. at 11–20.) Defendants assert that each Defendant may enforce the arbitration provision. (Mot. at 21.) And finally, Defendants claim that this Court may compel individual arbitration. (Mot. at 22.)

Plaintiffs oppose Defendants' Motion, arguing that Defendants have failed to meet their burden of proving that valid arbitration agreement exists because Plaintiffs did not assent to the Policies and Procedures. (Opp'n at 9–15.) Plaintiffs then argue that even if this Court finds that Plaintiffs have assented to the Policies and Procedures, the arbitration provision is procedurally and substantively unconscionable. (Opp'n at 15–22.) Plaintiffs assert that because certain Defendants are not signatories to the various Retailer Agreements, these Defendants cannot

enforce the arbitration provision contained in the Policies and Procedures, which Defendants claim are incorporated by reference into the Retailer Agreements. (Opp'n at 23.) Finally, Plaintiffs argue that to the extent the Court decides that Plaintiffs must arbitrate their claims, it should be the arbitrator who decides whether Plaintiffs are permitted to arbitrate their claims on a class-wide basis, as opposed to this Court. (Opp'n at 25.)

### A. Whether a Valid Arbitration Agreement Exists Between the Parties

When determining whether an arbitration agreement is enforceable upon the parties, the Court must look to see whether the parties have a valid agreement to arbitrate. *Standard Fruit Co.,* 937 F.2d at 477–78. No party may be forced into arbitration unless it has actually agreed to arbitration. *Lounge-A-Round v. GCM Mills, Inc.*, 109 Cal. App. 3d 190, 195 (1980). "As a threshold condition for contract formation, there must be an objective manifestation of voluntary, mutual assent." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003). "In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Under California law, "[a] contract may validly include the provisions of a document not physically a part of the basic contract." *Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 790 (2003) (internal quotation marks omitted). "It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document." *Id.* (internal quotation marks omitted). "For the terms of another document to be incorporated into the document executed by the parties[,] the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Id.*

Here, each of the three versions of the Retailer Agreements state that it incorporates the Policies and Procedures by reference. Version 3.0 states, in relevant part: "This Agreement shall include: (i) The LuLaRoe Policies and Procedures . . . which [is] hereby incorporated by reference." (Lyon Decl., Ex. 27 ("Ret. Agmt. 3.0"), ¶ 13.) Version 4.0 states, in relevant part: "Consultant acknowledges that she/he has read and agrees to comply with the LLR INC. Policies and Procedures . . . which [is] incorporated into and made a part of this Agreement." (Ret. Agmt. 4.0, ¶ 5.) Version 6.5.1 states, in relevant part: "Consultant acknowledges that Consultant has read and agrees to comply with the Policies and Procedures . . . which [is] incorporated into and made a part of this Agreement as set forth herein." (Ret. Agmt. 6.5.1, ¶ 11.)

Defendants submitted a declaration stating that if a retailer or potential new retailer requested the Policies and Procedures, LLR would provide it to the retailer or potential new retailer. (*See* Declaration of Summer Johnson in Support of Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This Action, Dkt. No. 76-2 ("Johnson Decl.") ¶ 3.) Additionally, Defendants made copies of the Policies and Procedures available to retailers in the "Tools and Assets Folder" of Back Office (LLR's intranet). (Lyon Decl. ¶ 6–7.) Defendants also submitted a declaration stating that "[b]efore September 2016, persons interested in becoming Retailers often received LLR documents, including a copy of the Retailer Agreement and the Policies and Procedures, from an existing Retailer." (Declaration of Megan Alvarez in Support of Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay This Action, Dkt. No. 76-7 ("Alvarez Decl.") ¶ 7.) Thus, if Plaintiffs were unaware of the terms of the Policies and Procedures, the Policies and Procedures were easily available to Plaintiffs by emailing LLR or accessing it on their Back Office accounts. And while it seems that retailers are not able to access Back Office until they have agreed to the Retailer Agreement, courts have concluded that consumers assented to arbitration agreements in scenarios where the arbitration agreement was provided after the consumers had already agreed to receive the products or services.

*See, e.g.*, *Amirhamzeh v. Wells Fargo Bank, N.A.*, No. 14-cv-02123, 2014 WL 12610227, at *1–2 (N.D. Cal. Oct. 31, 2014) (holding that the consumer was bound to arbitrate where consumer "did not receive the Terms and Conditions materials that included the arbitration agreement until after enrolling in the service"). Regardless, Defendants put forth evidence stating that if a potential new retailer requested the Policies and Procedures, LLR would provide it to the potential new retailer, demonstrating that the Policies and Procedures were easily available to Plaintiffs. *See Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 998 (N.D. Cal. 2012) (applying California law and holding that a document was incorporated by reference when the plaintiff "declare[d] that he either was never given a copy of the [document] or was given it after he signed the rental agreement," because "the terms of an incorporated document must only have been easily available to him; they need not have actually been provided"); *Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N. Am., Inc.*, No. C-11-0052 EMC, 2011 WL 1086035, at *4 (N.D. Cal. Mar. 24, 2011) (holding, under California law, that a set of general terms and conditions that included an arbitration agreement and that were not provided to the plaintiff (but were available upon request) were properly incorporated by reference into a purchase agreement).

Additionally, not only do versions 4.0 and 6.5.1 state that the Policies and Procedures are "incorporated into and made a part of this Agreement" (like version 3.0) (Ret. Agmt. 4.0, ¶ 5, Ret. Agmt. 6.5.1, ¶ 11), but they also state where a potential new retailer may access the Policies and Procedures. Version 4.0 states: "If Consultant has not yet reviewed the Policies and Procedures . . . they are posted at www.lularoe.com and are also included in Consultant's Back Office login at www.mylularoe.come/login." (Ret. Agmt. 4.0, ¶ 5.) Version 4.0 also includes an arbitration provision and explains that the arbitration process is "more fully described in the Policies and Procedures." (Ret. Agmt. 4.0, ¶ 21.) Version 6.5.1 states: "If Consultant has not yet reviewed the Policies and Procedures . . . they may be posted as directed at www.lularoe.com and are also included in Consultant's first order and

8.

accessible via Consultant's Back Office login at www.backoffice.mylularoe.com." (Ret. Agmt. 6.5.1, ¶ 11.) It is odd that version 6.5.1 states "may be posted" as opposed to "are posted," but as part of the new DocuSign onboarding process that LLR initiated in September 2016, those Plaintiffs who signed version 6.5.1 were provided with links to the Policies and Procedures and also had to click an "I agree" button attesting that they have "read, understand and agree with the . . . Policies and Procedures." (Alvarez Decl. ¶ 10, Ex. 32, p. 22.) The DocuSign onboarding process also included language that states: "The . . . LuLaRoe Polices & Procedures . . . constitute the terms and conditions of the Consultant Agreement. . . . [Y]ou must acknowledge that you have read, understand, and agree to adhere to the terms of those documents. If you have not already done so, click on the links provided to print and read the documents." (Alvarez Decl., Ex. 32, p. 22.)

The Court finds that Defendants have met their burden of establishing that the Policies and Procedures have been incorporated by reference into each version of the Retailer Agreement because each version explicitly references and states that the Policies and Procedures are incorporated by reference, the reference is clear and unequivocal, such that it is called to the attention of Plaintiffs, and the terms of the Policies and Procedures were easily available. *See Wolschlager*, 111 Cal. App. 4th at 790 (2003).

Because the Court finds that Plaintiffs have assented to the Policies and Procedures, and Plaintiffs do not dispute that their claims fall within the scope of the arbitration provision, the Court will next examine whether the arbitration provision is unconscionable.

**B.     Whether the Arbitration Agreement is Unconscionable**

Plaintiffs assert that "[e]ven if there was a validly formed agreement to arbitrate, . . . the ADR process itself is unconscionable and cannot be enforced." (Opp'n at 15.) Under California law, "[procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce

a contract or clause under the doctrine of unconscionability." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000) (emphasis and alterations in original) ("Because unconscionability is a reason for refusing to enforce contracts generally, it is also a valid reason for refusing to enforce an arbitration agreement."). The standard works as a sliding scale "whereby the more procedurally oppressive the arbitration clause is, the less evidence of substantive unconscionability is required to warrant the conclusion that the agreements to arbitrate are unenforceable." *McManus v. CIBC World Mkts. Corp.*, 109 Cal. App. 4th 76, 91 (2003). For the reasons discussed below, the Court finds that the arbitration provision in the Policies and Procedures is not unconscionable under California law.

### 1. Procedural Unconscionability

Plaintiffs argue that the arbitration agreement is procedurally unconscionable because the arbitration agreement is part of a "contract[] of adhesion [that is] permeated with oppression and surprise." (Opp'n at 16–18.)

"While California courts have found that 'the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability' in a range of circumstances, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (citations omitted). "[T]he adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Id.* at 1261–62. The Court finds that the Retailer Agreements that incorporate the Policies and Procedures by reference, which includes the arbitration provision, is a contract of adhesion "because there was unequal bargaining power between the [Plaintiffs] and [LLR], and the agreement was presented to [Plaintiffs] on a take-it-or-leave-it basis." *See, Poublon*, 846 F.3d at 1261. Thus, at most, the adhesive nature of the contract "would give rise to a low degree of procedural unconscionability." *Id.* at 1261–62.

Because Plaintiffs were not employees of LLR, however, and Plaintiffs did not have to elect to be retailers of LLR's products, there is an element of meaningful choice that combats the potential low finding of procedural unconscionability. *See, e.g.*, *Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 768 (1989), *reh'g denied and opinion modified* (July 21, 1989). "We believe that any claim of 'oppression' may be defeated if the complaining party had reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable." *Id.* at 768. "If 'oppression' refers to the 'absence of meaningful choice,' then the existence of a 'meaningful choice' to do business elsewhere must tend to defeat any claim of oppression." *Id.* As mentioned, Plaintiffs were not employees of LLR, and they could have sought to run their individual businesses through other direct marketing companies or other apparel companies. Courts "have treated the availability of market choice as a determinative factor in the analysis of an assertedly adhesive agreement." *Id.* at 770. "In many cases of adhesion contracts, . . . the weaker party lacks not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract; he must either adhere to the standardized agreement or forego the needed service." *Id.* at 771 (internal quotation marks omitted).

Thus, to the extent there is some degree of procedural unconscionability based upon the take-it-or-leave-it nature of the contract, Plaintiffs have not established that there was a total absence of meaningful choice. Therefore, there is minimal oppression based on the adhesive nature of the contract.

Next, Plaintiffs argue that the arbitration agreement is "[p]ermeated with [s]urprise." (Opp'n at 18.) The arbitration provision is laid out in a separate section of the Policies and Procedures titled "Arbitration." (Lyon Decl., Ex. 30, § 6.4.) The arbitration provision is not in smaller text. (Lyon Decl., Ex. 30, § 6.4.) The arbitration provision states that "arbitration shall be filed with, and administered by, the American Arbitration Association ("AAA") or JAMs under their respective rules

and procedures," and it provides links to where the respective rules and procedures for AAA and JAMS are available. (Lyon Decl., Ex. 30, § 6.4.) The arbitration provision also lays out the additional Federal Rules of Evidence and Civil Procedure that will apply during arbitration. (Lyon Decl., Ex. 30, § 6.4.) Thus, the Court does not find that the Policies and Procedures were permeated with surprise as Plaintiffs suggest.

As a result, the Court finds that there is at most, minimal procedural unconscionability.

### 2. Substantive Unconscionability

Plaintiffs argue that the arbitration provision is substantively unconscionable because it lacks mutual obligations to arbitrate, it imposes exorbitant costs on Plaintiffs, and it contains a broad confidentiality agreement. (Opp'n at 19–23.) "A provision is substantively unconscionable if it involves contract terms that are so one-sided as to shock the conscience or that impose harsh or oppressive terms." *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 1573 (2009) (internal quotation marks omitted). "Substantive unconscionability may be shown if the disputed contract provision falls outside the nondrafting party's reasonable expectations." *Id.*

Plaintiffs argue that the arbitration agreement lacks mutual obligations to arbitrate; however, the arbitration agreement states that "any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration." (Lyon Decl., Ex. 30 § 6.5.) Thus, both parties are required to arbitrate claims. While Plaintiffs argue that "Defendants[] carve[]out for themselves all claims that [they] can bring in court or simply act unilaterally to correct, (see 'Disciplinary Sactions') while require Consultants to always mediate and then arbitrate their claims," Plaintiffs assertions are not supported by the text of the arbitration provision. (Opp'n at 20; Lyon Decl., Ex. 30 § 6.5.) Plaintiffs' reference to "Disciplinary Sanctions," refers to section 6.1 of the Policies and Procedures. Section 6.1 essentially allows LLR to respond to poor conduct, through written warnings and

12.

termination. (Lyon Decl., Ex. 30 § 6.1.) This does not render the arbitration provision substantively unconscionable. As Defendants note, "[e]ven in the employment context, an employer can discipline an employee without advance arbitration." (Reply at 10 (citing *Lambright v. Fed. Home Loan Bank of S.F.*, No. C 07-4340 CW, 2007 WL 4259552, at *9 (N.D. Cal. Dec. 3, 2007).) Plaintiffs next argue, in a footnote, that the carve-out for certain intellectual property claims and claims based upon the non-solicitation provision shows a lack of mutual obligations to arbitrate because those claims that are carved out are claims that only Defendants would assert. (*See* Opp'n at 20 n.21, 21 n.22.) This carve-out, however, applies to both parties, not just Defendants, and the Court does not find that this carve-out is otherwise unreasonably one-sided.

Next, Plaintiffs argue that the arbitration provision is substantively unconscionable because it imposes exorbitant costs upon Plaintiffs. (Opp'n at 21–22.) Here, the arbitration provision requires Plaintiffs to split the cost of mediation and arbitration. (Lyon Decl., Ex. 30 §§ 6.3, 6.4.) The Court does not find that Plaintiffs have met their burden of establishing that arbitration here is "prohibitively expensive" (not just "high, excessive, or extravagant"). *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 244 (2013), *Green Tree Fin. Corp.–Ala. v. Randolp*, 531 U.S. 79, 90–92 (2000). ("The 'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."). Finding that this arbitration agreement is "prohibitively expensive" would "in effect, limit the enforcement of arbitration agreements to situations in which all of the parties to the agreement are wealthy. This absurd result, we think, is not what Congress intended when it enacted the FAA." *See Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 347 (6th Cir. 2006).

Lastly, Plaintiffs argue that the confidentiality obligation in the arbitration provision is one-sided. (Opp'n at 22–23.) The Policies and Procedures state that "[t]he parties and the arbitrator shall maintain the confidentiality of the entire

13.

arbitration process and shall not disclose to any person not directly involved in the arbitration process" information relating to the claims, testimony, or discovery, amount of arbitration award, or rulings of the arbitrator on procedural and substantive issues. (Lyon Decl., Ex. 30 § 6.4.) The Ninth Circuit has rejected, however, similar arguments that confidentiality obligations are substantively unconscionable. *See Poublon*, 846 F.3d at 1265–66 (finding that the "confidentiality provision in the Arbitration Procedure is not substantively unconscionable" and rejecting the argument that confidentiality provisions are substantively unconscionable because they "inhibit employees from discovering evidence from each other") (internal quotation marks omitted).

Thus, the Court does not find that the arbitration agreement contains "terms that are so one-sided as to shock the conscience or that impose harsh or oppressive terms." *See Parada*, 176 Cal. App. 4th 1573.

Accordingly, the Court finds that the arbitration provision in the Policies and Procedures is, at most, minimally procedurally unconscionable, but is not substantively unconscionable. Thus, the Court finds that the arbitration provision is not unconscionable. *Armendariz*, 24 Cal. 4th at 114 ("The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.") (internal quotation marks omitted) (emphasis in original).

### C. Whether Non-Signatories Can Enforce the Arbitration Agreement

Defendants concede that LuLaRoe, LLC is not a signatory to versions 4.0 and 6.5.1. of the Retailer Agreement (LLR, Inc. is). (Mot. at 21.) Defendants also concede that LLR, Inc. is not a signatory to version 3.0 of the Retailer Agreement (LuLaRoe, LLC is). (Mot. at 21.) The individual Defendants—Mark Stidham and DeAnne Brady, who are officers of LLR, Inc. and LuLaRoe, LLC, respectively—are not signatories to any version of the Retailer Agreements. (Mot. at 21; Opp'n at 23–

24; *see* Ret. Agmts. 3.0, 4.0, 6.5.1.) Plaintiffs argue that the non-signatories to the Retailer Agreements cannot enforce the arbitration provision. (Opp'n at 23–24.)

"[C]ourts have made clear . . . that an obligation to arbitrate does not attach only to those who have actually signed the agreement to arbitrate." *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1000 (N.D. Cal. 2012). "[I]n certain circumstances, a nonsignatory can compel a signatory to arbitrate." *Id.* at 1000. "[A] signatory can be compelled to arbitrate at the non-signatory's insistence under an alternative estoppel theory—*i.e.*, because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." *Id.* at 1000–01 (internal quotation marks omitted). "Indeed, courts have generally found . . . [that] arbitration is more likely to be attained when the party resisting arbitration is a signatory." *Id.* (internal quotation marks omitted).

The doctrine of equitable estoppel "prevents a signatory from hav[ing] it both ways . . . on the one hand, seek[ing] to hold the non-signatory liable pursuant to the duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing] arbitration's applicability because the defendant is a non-signatory." *Robinson v. Isaacs*, No. 11CV1021 JLS (RBB), 2011 WL 4862420, at *2 (S.D. Cal. Oct. 12, 2011) (internal quotation marks omitted). Here, Plaintiffs' claims are based upon the Retailer Agreements, and Plaintiffs seek to hold Defendants liable for the claims based upon certain obligations in the Retailer Agreements. Thus, the Court finds that the non-signatories to the various versions of the Retailer Agreements can invoke the arbitration provision under the doctrine of equitable estoppel.

**D. Whether the Arbitrator Should Decide Class Arbitrability**

Defendants ask the Court to compel Plaintiffs to arbitrate on an individual basis. (Mot. at 22–25.) "[W]ho has the primary power to decide arbitrability turns upon what the parties agreed about that matter." *First Options of Chi., Inc. v. Kaplan*, 514

15.

U.S. 938, 943 (1995) (internal quotation marks omitted). Here, the arbitration provision provides that "any controversy or claim arising out of or relating to the Agreement, or breach thereof, shall be settled by arbitration." (Lyon Decl., Ex. 30 § 6.4.) The Policies and Procedures, do not, however, include any language stating that arbitration can only proceed on an individual basis or that class-wide arbitration is prohibited. (*See* Lyon Decl., Ex. 30.)

In *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013), the Ninth Circuit stated that "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Here, the Policies and Procedures incorporate by reference the AAA rules and JAMS rules. (Lyon Decl., Ex. 30 § 6.4.) Defendants concede that "some district courts within this Circuit have held incorporation of the AAA rules sufficient to show consent for the arbitrator to decide class arbitrability." (Reply at 15.) Defendants then argue that "the only district court in this Circuit that has addressed an agreement that, like [Defendants'], references both JAMS and AAA rules, has compelled individual arbitration." (Reply at 15 (citing *Martinez v. Leslie's Poolmart, Inc.*, No. 8:14-CV-01481-CAS, 2014 WL 5604974, at *3 (C.D. Cal. Nov. 3, 2014)).) But *Martinez*, the unpublished district court case upon which Defendants rely, does not cite the Ninth Circuit's decision in *Oracle*. 2014 WL 5604974. Thus, it appears that based on this Ninth Circuit ruling, the incorporation of the AAA rules into the Policies and Procedures is evidence that the parties agreed to arbitrate arbitrability. As a result, the issue of whether Plaintiffs' claims can proceed on a class-wide basis is a question this Court leaves for the arbitrator. *See Lee v. JPMorgan Chase & Co.*, 982 F. Supp. 2d 1109, 1112–14 (C.D. Cal. 2013) (holding that the issue of whether parties had to proceed in arbitration on an individual basis or on a class, collective, or representative basis was a question for the arbitrator, not the court).

## V. CONCLUSION

In conclusion, the arbitration provision in the Policies and Procedures is a valid and enforceable agreement to arbitrate Plaintiffs' claims. In consideration of a valid agreement for arbitration, the fact that the parties do not contest that the scope of the agreement covers the dispute at issue, that the non-signatories are able to enforce the arbitration provision under equitable estoppel, and the FAA's policy favoring the resolution of disputes through arbitration, the Court finds Plaintiffs must arbitrate their claims. The issue of whether Plaintiffs can arbitrate their claims on a class-wide basis, however, is a question for the arbitrator. Thus, Defendant's Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay this Action is hereby **GRANTED in part and DENIED in part**.

The Court hereby **STAYS** this action pending the arbitration of Plaintiffs' claims. *See* 9 U.S.C. § 3. The Court further **ORDERS** that this action be removed from the Court's active caseload until further application by the parties or Order of this Court. To allow the Court to monitor this action, the Court orders the parties to file periodic status reports. The first such report is to be filed **by 4 p.m. on Friday, June 15, 2018**, unless the stay is lifted. The parties shall file successive reports **every 120 days thereafter**. Each report must indicate on the face page the date on which the next report is due. All pending calendar dates, are **VACATED** by the Court. This Court retains jurisdiction over this action, and this Order shall not prejudice any party to this action.

**IT IS SO ORDERED.**

Dated: April 17, 2018

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

17.